**Dorothy D. STANFIELD,**
**Plaintiff–Appellee,**

v.

**ANSWERING SERVICE, INC.,**
**Defendant–Appellant.**

No. 87–7559.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1989.

---

James E. Simpson, Lange, Simpson, Robinson & Somerville, James N. Nolan, Birmingham, Ala., for defendant-appellant.

Joe R. Whatley, Jr., Falkenberry, Whatley & Heidt, Birmingham, Ala., for plaintiff-appellee.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and TIDWELL *, District Judge.

RONEY, Chief Judge:

In this employment age discrimination case, the defendant employer appeals the denial of its motion for judgment notwithstanding the verdict and the district court's order granting plaintiff employee liquidated damages and reinstatement. We af-

firm the denial of employer's motion for judgment n.o.v. We reverse the judgment for reinstatement on the ground that the claim had been waived as a matter of law, and for liquidated damages on the ground that there was insufficient evidence to support a finding of willfulness.

Dorothy D. Stanfield contended that she was terminated from her job as a telephone operator by Answering Service, Inc. ("Answering Service," "the company," or "the employer") because of her age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 *et seq.*[1] The jury returned a verdict in favor of plaintiff in the amount of $14,755.34. The district court granted Stanfield's post-trial motion for liquidated damages and reinstatement. The total judgment for back pay, liquidated damages and attorney's fees is $42,846.46.

### I. Facts

Stanfield was hired as a telephone operator by Answering Service in 1969 when she was 41 years old. She was employed in the company's Birmingham office for approximately 16½ years. The company provides a 24-hour telephone answering service for subscribers, primarily doctors. Stanfield and other telephone operators were stationed at telephone computer terminals, the successor to mechanical switchboards, where they received and made a written record of telephone messages from patients and customers. Periodically, the operators would deliver messages to subscribers by telephone.

In the last years Stanfield worked for the company, her health declined. In 1979, she was diagnosed as having Crohn's disease, an intestinal condition which forced her to make frequent trips to the bathroom. Stanfield took a medical leave of absence to undergo surgery in connection

---

* Honorable G. Ernest Tidwell, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. The ADEA provides:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....

29 U.S.C.A. § 623(a)(1).

with her condition. Stanfield returned to work after the surgery, but her work was still interrupted by her need to go to the bathroom frequently.

In addition to her own health problems, Stanfield's husband was disabled and required her constant care. In July 1985, Stanfield's husband underwent cancer surgery. She requested and was granted a two-month leave of absence upon her husband's discharge from the hospital so she could care for him.

Toward the end of her leave of absence, on September 25, 1985, Stanfield telephoned the office manager, Ruth Jordan, to discuss Stanfield's return to her job. Jordan told plaintiff she was no longer needed and would not be allowed to return to work. Stanfield then telephoned the company's home office in Washington, D.C. and spoke with the owner of the company, who told her that she could not return to her job because she was unable to work. Stanfield protested, stating that her doctor had said she was able to work notwithstanding her medical problems. Nevertheless, her termination stood.

After bringing her complaint to the Equal Employment Opportunity Commission (EEOC) in Birmingham, she filed this suit.

In this appeal, Answering Service challenges the district court's finding that (1) plaintiff stated a *prima facie* case of age discrimination and its denial of defendant's motion for directed verdict; (2) its finding that the jury verdict was supported by substantial evidence and the denial of its motion for judgment n.o.v.; and (3) the grant of Stanfield's motions for liquidated damages and reinstatement.

## II. Discussion

### A. *Sufficiency of the Evidence*

The standard for reviewing a directed verdict or judgment n.o.v. is the same as that used by the district court to determine whether to grant either motion. Answering Service must show that the evidence so clearly favored its side that reasonable persons could not arrive at a contrary verdict.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (*en banc*). To determine whether Answering Service has met this standard, the court should consider all of the evidence—not just that evidence which supports the non-movant's case—but in the light most favorable to the party opposed to the motion. *Id.*

■ Stanfield had the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Whether a *prima facie* case of discrimination has been established is essentially a factual question. *Goldstein v. Manhattan Ind., Inc.*, 758 F.2d 1435, 1443 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). Of the three ways a plaintiff can establish a *prima facie* case in an age discrimination case, Stanfield pursued the

> modified *McDonnell Douglas* test to prove that (1) plaintiff was a member of a protected group, (2) plaintiff was discharged, (3) plaintiff was replaced with a person outside the protected group, and (4) plaintiff was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir.1977).

*Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988). *See, e.g., Stamey v. Southern Bell Tel. & Tel. Co.*, 859 F.2d 855, 859 (11th Cir.1988) (applying *McDonnell Douglas* test in ADEA case). (Stanfield also presented evidence of her supervisor's practice of hiring telephone operators who were less than 40 years-of-age as statistical proof of a pattern of discrimination. *Castle v. Sangamo Weston, Inc.*, 837 F.2d at 1558. This statistic by itself is insufficient to give rise to the inference of discrimination. *See Pace v. Southern Ry. Sys.*, 701 F.2d 1383 (11th Cir.) *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)).

■ Stanfield presented sufficient circumstantial evidence to permit a jury to decide that she had established a *prima*

*facie* case. She was a member of the protected group. She was fired. The jury could infer from the fact that Stanfield was employed for more than 16 years with the company without any complaints in her personnel file that she was qualified for the job.

Stanfield asserted that she was replaced by two 16-year-old girls hired by the company during her leave of absence. The record, however, does not support this assertion. Two part-time telephone operators were hired, one in July 1985 and the other in September 1985, to work the evening shift (4 p.m. to 8 p.m. or 9 p.m.). Stanfield worked the day shift. The company presented evidence indicating that no one was hired to replace Stanfield, and Stanfield herself admitted during cross-examination that these part-time hires were not assigned to work the day shift she had worked. This element of proof is not essential to Stanfield's case, however. While the *McDonnell Douglas* test provides a standard for evaluating these claims, "the particularly amorphous nature of age discrimination counsels against rigid application of [the] test." *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1387 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Stanfield's evidence was sufficient to establish a *prima facie* case regardless of whether she was replaced.

Once a *prima facie* case is established, the burden then shifts to the defendant to produce evidence that the plaintiff was "discharged for a legitimate, nondiscriminatory reason." *Archambault v. United Computing Sys., Inc.*, 786 F.2d 1507, 1512 (11th Cir.1986). *See Goldstein*, 758 F.2d at 1444. To rebut the plaintiff's evidence, the defendant must present evidence which "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Archambault*, 786 F.2d at 1512 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant satisfies its burden, "the plaintiff then carries the burden of persuasion that the reasons offered for his discharge were

merely a pretext for age discrimination." *Archambault*, 786 F.2d at 1512; *see Reynolds v. CLP Corp.*, 812 F.2d 671 (11th Cir.1987).

The company presented evidence intended to prove that Stanfield was dismissed, not for discriminatory reasons, but because in the last several years that she worked for the company, her job performance declined as a result of her illness. Stanfield, on the other hand, testified that during the period she worked for the company, she never received any verbal complaints about her work habits, nor had she received any disciplinary reports in her file. She also testified that her doctor said she was able to work. Stanfield also introduced evidence of her immediate supervisor's pattern of hiring persons under the age of 40, including the two 16-year-olds Stanfield alleged were hired to replace her. It was within the jury's province to weigh the evidence and assess the credibility of witnesses. *See Reynolds v. CLP Corp.*, 812 F.2d 671, 674-75 (11th Cir.1987).

Reviewed in the light most favorable to Stanfield, the thin factual record supports the district court's determination that there is substantial evidence upon which an impartial jury could reasonably have concluded that the company's articulated nondiscriminatory reason for discharging Stanfield was a pretext for age discrimination.

### B. *Reinstatement*

Answering Service contends that the district court abused its discretion in ordering reinstatement when Stanfield had previously refused the company's offer of reinstatement. After the district court entered judgment, Stanfield moved for an order requesting reinstatement. Before the court could rule on Stanfield's motion, the company filed a premature appeal to this Court and contemporaneously made an offer of reinstatement to Stanfield. Stanfield refused the offer, citing her husband's recent death as grounds for the refusal.

After the company's premature appeal was dismissed, Stanfield moved for an award of interim pay and front pay in lieu of reinstatement, alleging, *inter alia*, that

"plaintiff should not be faced with the undesirable situation of going to a job while the employer will be pursuing appeals to try to rid itself of her." The district court denied Stanfield's motion and ordered that she be reinstated with all benefits, stating:

It is undisputed that even without an order of reinstatement defendant, contemporaneously with the filing of its premature notice of appeal, offered to reinstate plaintiff subject to defendant's right ultimately to obtain justification for its original decision to terminate plaintiff, in which event defendant would, of course, again terminate plaintiff. Plaintiff declined defendant's offer of reinstatement. However, in declining defendant's offer, plaintiff cited a personal reason, namely, her husband's recent death. This reason cannot be ascribed to or blamed upon defendant. This reason for refusing further employment would have existed without regard to anything defendant did or failed to do. The court can understand why plaintiff might not have wished to accept reinstatement prior to any formal order of reinstatement while defendant was in the process of taking a premature appeal for the avowed purpose of accomplishing plaintiff's termination, but this is not the reason which plaintiff articulated. Therefore, plaintiff's request for interim and front pay will be denied, and, instead, plaintiff will now be ordered reinstated with all benefits. Both parties probably would be better off if defendant paid plaintiff a reasonable cash settlement, but defendant's insistence on plaintiff's reinstatement instead of front pay under the undisputed circumstances comports with this court's understanding of the law. If the court's discretion were broad enough to permit front pay here, the court would order it. To do so would probably constitute an abuse of discretion. This case is readily distinguishable from *Haskins v. City of Boaz*, 822 F.2d 1014 (11th Cir.1987).

*Stanfield v. Answering Service, Inc.*, No. 86–AR–0666–S (N.D.Ala. Aug. 1987) (Acker, J.) (unpublished).

■ There are a number of cases holding that frontpay is an appropriate remedy for an ADEA violation where reinstatement is impracticable or inadequate. *See Goldstein v. Manhattan Indust., Inc.*, 758 F.2d 1435, 1448–49 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 1005, 88 L.Ed.2d 457 (1985). The district court was correct in deciding to deny Stanfield's motion for payment in lieu of reinstatement. The offer of reinstatement that was simply refused for reasons not within the control of defendant does not entitle plaintiff to pay without work. The question then is whether Stanfield could be ordered reinstated after she had refused the company's offer of reinstatement. We think not.

The cases cited by Answering Service in support of its position are not directly on point, as they deal with plaintiff's entitlement to additional relief in the form of backpay or frontpay after refusing an offer of reinstatement for reasons directly connected to the reinstatement offer. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982); *O'Donnell v. Georgia Osteopathic Hosp.*, 748 F.2d 1543 (11th Cir.1984); *Giandonato v. Sybron Corp.*, 804 F.2d 120 (10th Cir.1986); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806 (8th Cir. 1982).

The analysis used in determining the appropriateness of frontpay versus reinstatement in *O'Donnell*, provides some guidance. In *O'Donnell*, the employer appealed the court's inclusion of frontpay and prejudgment interest in the computation of damages. The Court remanded the case for a finding as to whether reinstatement was an inappropriate remedy. In determining plaintiff's right to relief, this Court in *O'Donnell* stated that the trial court had to consider the terms under which employer's offer was made, and the reasons for its refusal. *Id.* at 1550–51. In this case, a finding that Stanfield's rejection of the offer was unreasonable is implicit in the trial court's refusal to grant Stanfield interim and frontpay.

■ Stanfield did not challenge the terms of the offer, but instead stated that

her husband's death was the reason for her refusal. Assuming that the company's offer of reinstatement was otherwise acceptable, Stanfield's refusal constitutes a waiver of her right to reinstatement. This conclusion is consistent with the purposes of the ADEA. The purposes of the Act are "to promote employment of older persons based on their ability rather than their age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C.A. § 621(b). In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court stated that the laws should be designed to encourage defendant employers to make unconditional, curative job offers to claimants in an effort to end discrimination quickly. *Ford Motor Co. v. EEOC*, 458 U.S. at 228, 102 S.Ct. at 3063. Although the *Ford* decision addressed the duty to mitigate damages under Title VII, it is instructive as a guide in interpreting the same duty under the ADEA. *See also Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982) (employee discharged in violation of ADEA must use reasonable efforts to mitigate his damages). Thus, it is consistent with the Act to encourage employers to make good-faith offers to claimants. Once such an offer is made, claimants forfeit their right to reinstatement unless their refusal of the employer's offer is reasonable. A contrary holding would allow an employee to avoid her obligation to mitigate damages by holding out for a court-ordered reinstatement. *See Claiborne v. Illinois Central R.R.*, 583 F.2d 143, 153 (5th Cir.1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). Thus, by refusing the company's offer of reinstatement, Stanfield waived her right to resume her former position, and the district court could not order Stanfield reinstated.

## C. *Liquidated Damages*

The company's final assertion is that the district court abused its discretion in awarding Stanfield liquidated damages. Under the ADEA, a prevailing plaintiff is entitled to double damages "only in cases of willful violations" of the Act. 29 U.S.C.A. § 626(b). Willfulness exists where the employer knew its conduct was prohibited or showed reckless disregard for whether its conduct was prohibited by the Act. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed. 2d 523 (1985). This Circuit has adopted this standard, most recently in *Spanier v. Morrison's Management Services, Inc.*, 822 F.2d 975, 978 (11th Cir.1987).

■ Thus, a finding of willfulness turns on the issue of intent or motivation and is a question of fact. The statutory language suggests that this type of punitive damages award requires a finding of willfulness separate and distinct from a finding of discrimination. *See Spanier v. Morrison's Management Services, Inc.*, 822 F.2d at 978. No jury instruction was given concerning willfulness. Thus, the question was not subsumed in the issue of liability decided by the jury as Stanfield argues. Stanfield argues alternatively that the court reserved the issue of willfulness for itself. There is no evidence in the record indicating that the judge reserved the issue, nor are there findings concerning willfulness in the district court's opinion.

■ Thus, in the absence of a finding of willfulness by either the jury or the judge in a proper circumstance, it was error for the district court to grant Stanfield's motion for liquidated damages and reinstatement. A review of the record reveals that the evidence would not sustain a finding of willfulness for liquidated damages purposes even if the question had been submitted to the jury.

AFFIRMED in part, REVERSED in part and REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

G. ERNEST TIDWELL, District Judge, concurs except as to Part IIA.