John H. LEWIS, Plaintiff–Appellant,

v.

FEDERAL PRISON INDUSTRIES, INC., a corporation chartered under the laws of the United States, Defendant–Appellee.

Nos. 88–3570, 88–3774.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1992.

Terrence T. Dariotis, Kahn & Dariotis, Michael R. Kercher, David K. Miller, Broad & Cassel, Tallahassee, Fla., for plaintiff-appellant in No. 88–3570.

Terrence T. Dariotis, M. Stephen Turner, Michael R. Kercher, David K. Miller, Tallahassee, Fla., for plaintiff-appellant, in No. 88–3774.

Kenneth W. Sukhia, Asst. U.S. Atty., Tallahassee, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellant, a former employee of appellee, Federal Prison Industries, challenges the district court's conclusion that, although appellant established his case of constructive discharge in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, appellee's offer of reinstatement six weeks after his discharge "cut off" his right to recover lost wages and benefits. Although normally such an offer would indeed terminate rights to recover lost income or benefits, we agree with appellant that, in this case, the circumstances of his discharge nullify the remedial effects that such an offer would usually engender.

## FACTS

Appellee, Federal Prison Industries, ("FPI"), employed appellant, John H. Lewis, from May 28, 1970 through December 29, 1982 at the Federal Correctional Institution ("FCI") in Tallahassee, Florida. For the last several years of his employment, Lewis held the position of woodcrafter assembly foreman, and reported to a general foreman, William C. Tidwell.

As we have already noted in a previous opinion, *Lewis v. Federal Prison Industries*, 786 F.2d 1537 (11th Cir.1986), the factories manager, Scott Graham, hired thirty-four year old Patty Baker in 1981, ostensibly for the position of assistant assembly foreman. Tidwell, however, rather than Lewis, supervised Baker, and by the fall of 1981, Tidwell had informed Lewis that he would replace him with a woman. Soon after Lewis became eligible for retirement, Tidwell initiated a campaign of harassment designed to force Lewis' early retirement. Although Tidwell knew that a doctor had prescribed valium for Lewis, and that pressure at work would upset him, Tidwell made Lewis "follow the book to the letter," and ensured his continued discomfort at work.

Tidwell at first primarily directed verbal abuse at Lewis. For example, he upbraided Lewis in the presence of other FPI and FCI employees; he also advised other employees to avoid Lewis. Tidwell often reminded Lewis that Patty Baker would replace him, and that Lewis should "go ahead and retire." By March, 1982, however, Tidwell's harassment had intensified. Tidwell told Lewis that if he insisted on remaining at FCI, he would not permit him to sit. Tidwell therefore directed others to remove Lewis' desk chair, and to move his desk into the middle of an open area so that Tidwell could easily observe him at all times.

Tidwell continued to pressure Lewis to retire. In April, 1982, he advised Lewis that his current performance evaluation would be his last satisfactory one. Inmates and others, furthermore, at times observed Tidwell shouting at Lewis. In July, 1982, Tidwell charged Lewis with criminal activity at the facility, but the FCI administration dropped the charges when a subsequent investigation revealed that Tidwell had made at least one false statement regarding the allegations. Nonetheless, in July and August, 1982, Tidwell "counselled" Lewis for certain production problems; another foreman testified that Tidwell blamed Lewis for problems caused by other employees.

In August, 1982, Lewis consulted his doctor, Dr. Henry, who prescribed medication for Lewis' nerves and ordered him to take a week off from work. When Lewis returned to work, he submitted a certificate from Dr. Henry, stating that Lewis suffered from "acute agitated depression."

On October 4, 1982, Tidwell gave Lewis the poor six-month performance that he had promised. The next day, Dr. Henry placed Lewis on immediate sick leave, and advised him not to return to work. Lewis continued to receive treatment from Dr. Henry and from a psychiatrist, Dr. Moore, both of whom advised him not to return to FCI. On December 29, 1982, Lewis applied for retirement.

On January 5, 1983, Warden Joseph P. Bogan offered Lewis reinstatement to his former position at FCI. Both Dr. Henry and Dr. Moore, however, warned Lewis that he should not return to work at FCI, and Lewis rejected reinstatement.

## JUDICIAL PROCEEDINGS

On January 24, 1983, Lewis filed suit in the United States District Court for the Northern District of Florida, alleging that the appellee had constructively discharged him in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"). In its initial judgment, the court concluded that Lewis failed to establish a *prima facie* case of age discrimination; it reasoned that it could not hold FPI responsible for Tidwell's conduct. This court reversed, holding that FPI's management had actual and constructive knowledge of many of the discriminatory actions directed against Lewis, and knew or should have known that no one had implemented

effective remedial measures. This court therefore held that Lewis had established a *prima facie* case against FPI for age discrimination, and remanded the case for further proceedings. *Lewis*, 786 F.2d at 1545.

On remand, the district court heard additional argument, and reconsidered the evidence adduced at the previous trial. The court then concluded that FPI's explanation for Lewis' resignation was pretextual, and that FPI had indeed constructively discharged him in violation of the ADEA. The court also concluded, however, that Lewis curtailed his right to recover lost wages and benefits when he rejected FPI's offer of reinstatement six weeks after his constructive discharge. The court therefore awarded Lewis only the wages and increased retirement benefits that he had lost during the six-week period between his constructive discharge and the warden's offer of reinstatement, and directed the parties to calculate those damages. The court subsequently entered an order awarding Lewis net back pay of $940.89 plus interest, an increase in retirement benefits of $4.00 per month, and an increase in Mrs. Lewis' survivor annuity by $2.40 per month.

Lewis then filed this appeal challenging the district court's limitation of his right to recover lost wages and benefits to the six-week period before the offer of reinstatement.

### ISSUES

Lewis now challenges the district court's conclusion that he unreasonably rejected appellee's offer of reinstatement. Lewis also contends that the court abused its discretion in its award of damages under the ADEA. Lewis finally argues that the district court should have awarded him attorneys' fees under the ADEA.

### DISCUSSION

*The Offer of Reinstatement*

■ We must first consider whether Lewis reasonably rejected Warden Bogan's offer of reinstatement, for our resolution of that issue will determine whether we need address his other contentions. As a general rule, "a Title VII claimant's rejection of a defendant's job offer normally ends the defendant's ongoing responsibility for back pay...." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982). As the Supreme Court has noted, such a rule "encourage[s] Title VII defendants promptly to make curative, unconditional job offers to Title VII claimants, thereby bringing defendants into 'voluntary compliance' and ending discrimination far more quickly than could litigation proceeding at its often ponderous pace." *Ford Motor Co.*, 458 U.S. at 228, 102 S.Ct. at 3063. Nonetheless, although the law encourages claimants to accept offers of reinstatement, it does not, in every circumstance, *require* them to do so, and for that reason, we have established in this circuit that "front pay is an available remedy under the ADEA." *O'Donnell v. Georgia Osteopathic Hospital*, 748 F.2d 1543, 1551 (11th Cir.1984). *See also Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir.1988) ("Admittedly, awarding prospective relief involves some risk of uncertainty, but that in itself does not preclude an award of such relief.")

In *Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1296 (11th Cir.1989), we held that, once an employer makes a "good faith" offer of reinstatement, "claimants forfeit their right to reinstatement unless their refusal of the employer's offer is reasonable." In the instant case, the evidence amply supports the district court's implicit finding that Warden Bogan made his "unconditional" offer of reinstatement in good faith. Nonetheless, our analysis does not end with this comfortable conclusion, for our examination of Lewis' reasons for rejecting Bogan's offer compels us to agree with appellant that this rejection was "reasonable." *Stanfield*, 867 F.2d at 1296.

As the Fourth Circuit has noted in a similar context, the "infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages." *Duke v. Uniroyal, Inc.*, 928

F.2d 1413, 1424 (4th Cir.1991). Several courts, however, have outlined factors they consider when determining whether reinstatement, or front pay, provides the more appropriate remedy for a successful claimant.

Many courts, including this one, have noted that "[f]ront pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1449 (11th Cir.1985), *cert. den.* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). *See also E.E.O.C. v. Prudential Federal Savings and Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.1985), *cert. den.* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 281 (8th Cir.1983).

In *Eivins v. Adventist Health System*, 660 F.Supp. 1255 (D.Kan.1987), another court listed several factors that would help determine the advisability of front pay, rather than reinstatement, as a remedy for victims of discrimination. In *Eivins*, the court favored front pay over reinstatement where "defendant's management . . . intimidated or threatened [claimant]," and where "the evidence indicated [ ] that [claimant's] self worth was crushed by his dismissal." 660 F.Supp. at 1263.[1]

Courts have also considered the date of a claimant's retirement in considering the advisability of front pay. In *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 376 (3rd Cir.1987), for example, the court held that front pay was an appropriate remedy, and noted that it would "assume[ ] that the plaintiff would have remained with the employer until normal retirement age [ ] [s]ince plaintiffs were all within eight years of . . . retirement. . . ." *See also Eivins*, 660 F.Supp. at 1264 ("The plaintiff is 57

years old and nearing the usual age of retirement. Because the time period for which front pay is being awarded is relatively short, reinstatement may be inappropriate.")

In the instant case, Dr. Moore, a psychiatrist treating Lewis, testified that Lewis experienced a "reactive" depression in response to the discriminatory acts that occurred at FCI. Dr. Moore further testified that, although Lewis' health had improved since he left FCI, his symptoms would return should he return there:

> Based upon the degree of depression, agitation, physiological complaints that I saw with Mr. Lewis, and the subsequent relief of many of these complaints that I have seen with Mr. Lewis subsequent to his not returning to work, and based upon my clinical experience, it's my impression that should Mr. Lewis return to that environment we would have a return of significant symptoms.

> \*  \*  \*  \*  \*  \*

> My opinion is that should he have to return to that place of employment, that those symptoms would be significantly increased, that Mr. Lewis would again be depressed, that he would again become anxious, that he would again demonstrate psychosomatic disfunction.

Dr. Moore also testified that Lewis' depression would recur if he returned to FCI, even if no additional discrimination occurred there. Finally, he characterized Lewis' " . . . decision to stay away from that former place of employment" as "a very good, sound, healthy decision."

In our view, Lewis' circumstances offer many of the factors that courts traditionally consider when assessing the value of front pay. His experiences at the courthouse involved him in antagonistic relation-

---

1. The district court also noted that:
   Although defendant attempts to paint a rosy picture of the warm relationship between its employees and plaintiff and the open arms with which it awaits plaintiff's return, common sense dictates otherwise.
   *Eivins*, 660 F.Supp. at 1263. We hesitate, however, to rely too heavily on this language, for it is all too easy to characterize an offer of rein-

   statement in cynical terms. We remain mindful, nonetheless, that an employers' past conduct can sometimes illuminate hidden motives in post-litigation behavior. Not every employer in these circumstances undergoes a moral reawakening. On the other hand, not every employer, once it appreciates the extent of illegal discrimination, permits it to continue.

ships with his supervisors, who intimidated him and isolated him from his peers. At the time of his constructive discharge, moreover, Lewis was only four years away from the date of his mandatory retirement, so we may fairly assume that Lewis would have remained at FCI until the time of that retirement.

For our purposes today, however, the most important factor remains the evidence adduced at trial that the discrimination endured by Lewis in effect *disabled* him. We note in this regard that the Ninth Circuit has recently approved front pay as a remedy where "... there is evidence from a mental health practitioner and doctors that [claimant] could not work at all or, as one said, should never work at any branch of the [employer] again." *Ortiz v. Bank of America National Trust and Savings Association*, 852 F.2d 383, 837 (9th Cir.1988). In this case, the uncontradicted evidence showed that Lewis could not return to his former work environment without suffering a return of the symptoms that so debilitated him in the first place. In this instance, Warden Bogan's offer of reinstatement, however sincere, became a futile gesture that did not, under the facts of this case, terminate Lewis' claim.

We caution, as have other courts before us, that "[b]ecause of the potential for windfall, [the] use [of front pay] must be tempered." *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991). Front pay remains a special remedy, warranted only by egregious circumstances. Although we have listed several factors that may prompt our resort to this sort of relief, we emphasize that in many cases the remedy of reinstatement will continue to suffice despite the presence of any one of these factors. Here, Lewis emerged from an antagonistic, discriminatory work environment with an emotional disturbance that rendered him unfit to return to that environment, within a time frame that left him only four years until the date of his mandatory retirement. Not every claim, however legitimate, will produce circumstances which so clearly mandate the remedy of front pay.

## Attorney's Fees

The district court concluded that the language of 29 U.S.C. § 633a(c) was not sufficient to overcome either the so-called "American rule" of attorney's fees, or the doctrine of sovereign immunity. We agree.

The "American Rule" provides that, unless there exists statutory or contractual provisions to the contrary, litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Thus the party seeking attorney's fees pursuant to statutory authority must demonstrate that Congress clearly intended to allow such recovery. *Fitzgerald v. United States Civil Service Commission*, 554 F.2d 1186, 1189 (D.C.Cir.1977).

Congress explicitly permitted claimants in the private sector to recover attorney's fees by incorporating Section 216(b) of the Fair Labor Standards Act ("FLSA") into the ADEA. *See* 29 U.S.C. § 626(b). Section 216(b) of the FLSA permits courts to "allow a reasonable attorney's fee to be paid by defendant...." Although Congress subjected government employees to the Act in 1974, it did not apply Section 216 to the public sector. Instead, Congress provided only that a federal claimant could receive "such legal and equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c). In 1978, moreover, Congress further amended the ADEA to provide that its provisions applicable to government employees "shall not be subject to, or affected by, any provision of this chapter [other than one irrelevant exception] and the provisions of this section" 29 U.S.C. § 633a(f). Thus, in *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 2705, 69 L.Ed.2d 548 (1981) the Supreme Court characterized this section as "self-contained and unaffected by other sections...."

We recognize that in *Lehman* the Supreme Court was expressly addressing only the right to a jury trial, a procedural matter under *Byrd v. Blue Ridge Rural Electric Co-op.*, 356 U.S. 525, 536, 78 S.Ct. 893,

900, 2 L.Ed.2d 953 (1958). Nonetheless, as another court has reasoned:

> Just as section 7 expressly authorizes a jury trial in private ADEA cases, section 7 expressly incorporates the provisions of the FLSA ... authorizing awards of attorneys' fees and liquidated damages. If Congress had intended that the same type of relief should be available in federal employee ADEA cases it could easily have included the same language in section 15. Congress' failure to do so suggests that it intended that FLSA remedies would not be available in federal employee ADEA cases.

*Muth v. Marsh*, 525 F.Supp. 604, 608 (D.D.C.1981).

The United States remains "immune from suit save as it consents to be sued...." *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). (citation omitted). If Congress had intended to permit claimants to recover attorney's fees in suits against the government under the ADEA, then it had ample opportunity to do so. In both private sector ADEA and Title VII cases, Congress explicitly authorized attorney's fees. Its failure to include such provisions in this context compels us to determine that Congress did not intend to provide this remedy for public sector litigants.

## CONCLUSION

We REVERSE the district court's conclusion that Lewis' rejection of his employer's offer of reinstatement curtailed his right to recover lost income and benefits until the date of his mandatory retirement. We AFFIRM, however, the district court's conclusion that 29 U.S.C. § 633a does not authorize us to award attorney's fees to claimants in the public sector. Although appellant requests that we "guide" the district court in its calculation of the damages owed him by appellee, we choose instead to REMAND the matter to the district court so that it may determine the damages due appellant.

REVERSED in part, AFFIRMED in part, and REMANDED.

---

TJOFLAT, Chief Judge, concurring in part, dissenting in part:

I concur with the court's conclusion that 29 U.S.C. § 633a (1988) does not authorize us to award attorney's fees to claimants in the public sector.[1] I dissent from the court's conclusion, however, that the Age Discrimination in Employment Act (ADEA) authorizes us to award front pay to public as well as private employees.[2]

This circuit has never addressed the issue of the availability of front pay in the public sector. It has determined that front pay is an available remedy for private employees under 29 U.S.C. § 626 (1988). *See O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1551 (11th Cir.1984).[3]

---

1. *See ante* at p. 1282; *see also Palmer v. General Servs. Admin.*, 787 F.2d 300, 302 (8th Cir.1986) (holding that attorney's fees are not available in administrative proceedings under § 633a); *Kennedy v. Whitehurst*, 690 F.2d 951, 966 (D.C.Cir.1982) (same). *But see DeFries v. Haarhues*, 488 F.Supp. 1037, 1045 (C.D.Ill.1980) (holding that attorney's fees are available in civil actions under § 633a(c)). *See generally* 29 U.S.C. § 626(b) (1988) (incorporating § 216(b) of the Fair Labor Standards Act (FLSA), allowing the award of reasonable attorney's fees in private civil actions against private employers).

2. The award of "front pay" covers monetary damages for future economic loss (future wages) until the age of retirement; the amount of damages recovered may be mitigated by claimant's new employment or claimant's unreasonable refusal of reinstatement. *See Wilson v. S & L Acquisition Co.*, 940 F.2d 1429, 1433 n. 6, 1434 (11th Cir.1991); *see also infra* note 10.

3. *See also Wilson v. S & L Acquisition Co.*, 940 F.2d at 1438 (stating that the general rule in private employer cases is "that prospective damages are awarded in lieu of reinstatement when it is not feasible to reinstate the employee"); *Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1295 (11th Cir.1989) (noting that "frontpay is an appropriate remedy for [a private employer] ADEA violation where reinstatement is impracticable or inadequate"); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1545 (11th Cir.1988) (stating that the "award of front pay [under § 626] is a form of equitable relief; as such, 'the decision whether to grant [it] ... lies in the discretion of the district court'") (quoting *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1563 (11th Cir.1988); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1449 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 1005, 88 L.Ed.2d 457 (1985) (stating that front pay "may be particularly appropriate [in private employer ADEA

The case before us deals, however, with a civil action brought by a federal employee against a federal employer, Federal Prisons Industries, Inc. (FPI), under 29 U.S.C. § 633a. Moreover, Congress and the Supreme Court view section 633a as "self-contained and unaffected by other sections, including those governing ... actions against private employers." *See Lehman v. Nakshian*, 453 U.S. 156, 168, 101 S.Ct. 2698, 2705, 69 L.Ed.2d 548 (1981); H.R.Rep. No. 527, 95th Cong., 1st Sess. 11 (1977) ("Section [633a] ... is complete in itself"). Hence, our prior determinations of front pay in the private employer context do not mandate the award of front pay in this case.

Nevertheless, the arguments I present in part I below against the permissibility of front pay under the ADEA are not based solely on the federal status of the employer in this case. I am convinced that *O'Donnell* and the line of cases following its reasoning are decided wrongly. Accordingly, I would hold, regardless of the status of the employer, that front pay is not a permissible remedy under the ADEA.[4]

## I.

## A.

When the ADEA was enacted in 1967, it specifically excluded federal employees from the remedial provisions in section 626. *See* 29 U.S.C. § 630(b). In amending the ADEA in 1974 and 1978 to include federal employees, Congress chose to create a separate and discrete federal remedial scheme rather than subsume these employees under the pre-existing enforcement procedures in the private sector. *See* 29 U.S.C. § 633a(f).[5] The legislative history states that section 633a(f) was added to "make[ ] it clear that section [633a] ... is independent of any other section of [the ADEA]." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 11 (1978), *reprinted in* 1978 U.S.C.C.A.N. 504, 528, 532; *see Nakshian*, 453 U.S. at 168, 101 S.Ct. at 2705. Thus, Congress has intended that we do not borrow from the remedies found in section 626 in our determination of permissible remedies under section 633a.[6]

Section 633a presents the federal claimant with the option of two enforcement procedures: (1) an administrative proceeding conducted by the Equal Employment Opportunity Commission, which "is authorized to enforce the provisions ... of this section through appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section," 29 U.S.C. § 633a(b); and, (2) a civil action brought in federal court "for such legal or equitable relief as will effectuate the purposes of this chapter," 29 U.S.C. § 633a(c).[7] No where in the text of these provisions and no where in the legislative history is there any mention of front pay. The courts, therefore, are left to their own creative devises when designing the front pay remedy.

The Eleventh Circuit has come to view front pay as "equitable relief" under section 626 of the ADEA. *See Ramsey v.*

---

cases] in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy").

4. I realize that our "prior circuit rule," *see supra* note 3, would require us to follow *O'Donnell's* holding were this a private employee case. The rule does not, however, bind us to follow *O'Donnell* here since this is a public employee case.

5. Section 633a(f) provides in pertinent part:

Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than ... the provisions of this section.

29 U.S.C. § 633a(f).

6. Of course, I contend that even if we look at the remedial provisions in § 626, we cannot find the remedy of front pay. *See infra* notes 12 and 14 and accompanying text.

7. Section 621(b) states the purposes of the ADEA as follows:

It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621(b).

*Chrysler First, Inc.,* 861 F.2d 1541, 1545 (11th Cir.1988).[8] The argument for holding that front pay is equitable relief, aided considerably by the broader remedial language of section 626(b), *see O'Donnell,* 748 F.2d at 1551,[9] is that front pay is a substitute for reinstatement, when reinstatement is impracticable or inadequate. *See Stanfield,* 867 F.2d at 1295; *Goldstein,* 758 F.2d at 1449.[10] Since reinstatement is equitable relief, so the argument goes, it follows that its substitute, front pay, is also equitable relief. *See Goldstein,* 758 F.2d at 1449.

This assumed equivalence between front pay and equitable relief fails for three reasons. First, front pay *is* legal relief. In *Lorillard v. Pons,* 434 U.S. 575, 583 n. 11, 98 S.Ct. 866, 871 n. 11, 55 L.Ed.2d 40 (1978), the Supreme Court distinguished the legal and equitable remedies available under section 626(b) on the basis of whether the remedy involved money damages:

Section 7(b), 29 U.S.C. § 626(b), does not specify which of the listed categories of relief are legal and which are equitable. However, since it is clear that judgments compelling "employment, reinstatement or promotion" are equitable, see 5 J. Moore, Federal Practice ¶ 38.21 (1977), Congress must have meant the phrase "legal relief" to refer to judgments "enforcing ... liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

Front pay, which is the recovery of monetary damages for lost future wages, should be classified, therefore, as "legal relief" under the Court's analysis;[11] but it is not the kind of limited legal relief Congress intended under the ADEA, i.e., back pay and liquidated damages. *See* H.R.Conf.

---

**8.** A majority of the circuits that have considered the issue agree with the Eleventh Circuit in holding that front pay is equitable relief under section 626. *See, e.g., Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985); *Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1257 (2d Cir.1987); *Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1423 (4th Cir.1991); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1100 (8th Cir.1982).

A few circuits have held, on the other hand, that front pay is more appropriately classified as "legal relief" under section 626. *See Maxfield v. Sinclair Int'l,* 766 F.2d 788, 796 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Fite v. First Tennessee Prod. Credit Ass'n,* 861 F.2d 884, 893 (6th Cir.1988); *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). Although these circuits are correct in their assessment that front pay is a legal remedy, it is not the kind of limited legal relief permissible under the ADEA. *See infra* notes 12 and 14.

**9.** Section 626(b) provides in pertinent part:

In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including *without limitation* judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b) (emphasis added).

Section 633a(b) provides in pertinent part:

under section 626(b) on the basis of whether the remedy involved money damages:

[T]he Equal Employment Opportunity Commission is authorized to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section.

29 U.S.C. § 633a(b).

In *Gregory v. Garrett,* 1990 U.S.Dist. LEXIS 1460 (W.D.Mo. Feb. 6, 1990), however, the court noted that "front pay is an equitable remedy, which is granted in lieu of reinstatement, and both the above-noted sections [626(b) and 633a(b) ] authorize reinstatement." *Id.*

**10.** Reinstatement has been judged to be impracticable or inadequate where there is discord and antagonism between the parties, *Goldstein,* 758 F.2d at 1435, when it is "reasonable" for the claimant to refuse an offer of reinstatement, *O'Donnell,* 748 F.2d at 1550–51; *Stanfield,* 867 F.2d at 1295–96, and when the claimant is "nearing" the normal retirement age, *Eivens v. Adventist Health System,* 660 F.Supp. 1255, 1264 (D.Kan.1987). This panel finds that the facts of the case at bar present a reasonable refusal of reinstatement by Lewis because there were only four years until his mandatory retirement and the expert testimony established that "the discrimination endured by Lewis in effect *disabled* him." *See ante* p. 1281 (emphasis in the original).

**11.** *Accord Smith v. Consolidated Mutual Water Co.,* 787 F.2d 1441, 1445–46 (10th Cir.1986) (Barrett, J., dissenting in part) (noting that the analysis in *Lorillard* leads inexorably to the conclusion that "[i]t is well established that the award of future damages is a legal remedy.").

Rep. No. 950, 95th Cong., 2d Sess. 13–14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 528, 535.[12]

Nevertheless, a few courts have argued, regardless of which remedial label is applied, that when money damages are "restitutional," rather than compensatory, they constitute equitable relief. *See Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991).[13] Even if we accept this argument, however, the money damages awarded in this case are not restitutional. The award of front pay in this case does not restore Lewis to the status quo ante, the status obtaining before his constructive firing occurred; rather, the front pay award compensates Lewis for a continuing injury—continuing age discrimination—until retirement, even though there is no continuing cause of the injury. This is a windfall, not restitution.

Second, the argument that front pay is an equitable remedy under the ADEA turns the remedial relationship between legal relief and equitable relief on its head. Courts have the discretion to award equitable relief when *legal* remedies are inadequate, not the converse. Moreover, although the equitable powers of federal courts should be broadly construed to afford complete relief under a statute, *Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 291–92, 80 S.Ct. 332, 335, 4 L.Ed.2d 323

(1960), such equitable powers cannot be used to expand or override the intent of Congress to provide limited legal remedies; such as Congress limiting legal remedies to "unpaid minimum wages and unpaid overtime compensation" and liquidated damages under the ADEA. *See supra* note 12. We should not sanction the district court's use of its equitable powers to frustrate the intent of Congress.

Third, and most importantly, front pay is not appropriate "equitable" relief because it does not effectuate the purposes of the ADEA—and all remedies of the ADEA, legal or equitable, must effectuate the purposes of the Act.[14] Awarding front pay does not promote the continued employment of older persons based on their ability rather than age, does not prohibit employer discrimination, and does not help employers and workers to solve age discrimination problems in the workplace. 29 U.S.C. § 621(b). To the contrary, the availability of front pay creates an incentive for the discharged employee to remain unemployed, to take early retirement, so to speak, and creates an incentive for the federal employer to settle the case without addressing the possible age discrimination in the workplace. To show that this is the case, the following subparts examine the incentives of the remedial scheme under the ADEA as drafted by Congress and,

**12.** In the private employee context, legal relief is defined as back pay and liquidated damages. H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 528, 535 provides in pertinent part:

"amounts owing" [under section 626(b) ] contemplates two elements: First, it includes items of pecuniary or economic loss such as wages, fringe, and other job-related benefits. Second, it includes liquidated damages (calculated as an amount equal to the pecuniary loss) which compensates the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA.

*See also Lorillard v. Pons*, 434 U.S. at 584, 98 S.Ct. at 872 (stating that "the ADEA incorporates the FLSA provision that employers 'shall be liable' for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of *backpay* is a matter of equitable discretion") (emphasis added). Further, legal relief in private employee cases entails the right to a jury trial. *Lorillard,* 434 U.S. at 585, 98 S.Ct. at 872.

Legal relief in the federal sector, however, does not include liquidated damages, *see Chambers v. Weinberger,* 591 F.Supp. 1554 (N.D.Ga. 1984), or the right to a jury trial. *See Nakshian,* 453 U.S. at 168–69, 101 S.Ct. at 2705–06. The only limited legal relief that remains in federal employee cases is back pay—"amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

**13.** *See also Chaufeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 570–71, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) (stating that a monetary award may be a form of equitable relief if it is "restitutionary, such as in 'action[s] for disgorgement of improper profits,' ... [or] 'incidental to or intertwined with injunctive relief' ") (citations omitted).

**14.** The following analysis of Congressional policy in the ADEA also undermines the decisions of those courts that have classified front pay as "legal relief" under the ADEA. *See supra* note 8.

then, examine the skewed remedial scheme presented by the addition of the front pay remedy that the court adopts today.

### B.

#### 1.

Front pay becomes an issue in only one specie of age discrimination case: where the employee claims that his employer discharged him, actually or constructively, on account of his age. Front pay is not likely to be an issue in a failure-to-hire case, because lost future wages would be difficult to prove; they would be speculative, at best. Front pay is not likely to be an issue in failure-to-promote case, because the employee would rather have the promotion than the lost future wage increment (reduced to present day value); and where the promotion cannot be awarded because the position sought has been filled, the court can, as an equity remedy, simply order the employer to pay the employee the wages of that position.

Returning to the actual or constructive discharge cases, I think it clear that if front pay is not available, the employee, if he pursues his claim, will always be seeking reinstatement with back pay. If the employer's discriminatory acts disabled the employee, as the appellant claims here, the employee will be seeking, as additional equitable relief, sick leave, with appropriate treatment, and such changes in working conditions as may be necessary to restore the status quo ante.

I further suggest that, without front pay, the employee will have little incentive to prosecute a frivolous claim. The only damages that he could recover would be back pay; their amount would depend on the time that elapsed between the employee's discharge and the trial or settlement of his case. In short, the potential damages (including an award of attorneys' fees in the case of a private but not a federal employer, *see supra* note 1) might be such as to give the case little settlement value and effectively eliminate the possibility of hiring a lawyer on a contingent fee basis. An employee would bring a frivolous suit,

then, only if he was able, and willing, to finance it out of his own pocket.

Turning to the federal employer (which I define, for sake of discussion, as the person in charge of the workplace and of the employee), I suggest that, in a meritorious case, if front pay is not recoverable, the employer would have at the very outset a substantial incentive to reconcile the problems with the employee. For, if the matter is not resolved, litigation ensues, and the employee prevails, the federal employer may be blamed by his superiors for the discriminatory conduct and, if not disciplined, might find that his chances for advancement—in pay or in position—have diminished.

In sum, the prohibition against front pay encourages the parties to reconcile their differences and to restore the status quo ante. This, then, enhances the goals of the ADEA.

#### 2.

If the employee can recover front pay under the ADEA, the employee, and the employer as well, may have an incentive to dissolve the employment relationship. The employee, after weighing the potential for front pay and future employment opportunities (which he would not willingly disclose to the employer or the court, because the disclosure would mitigate his front pay damages) against reinstatement and back pay, may opt for front pay—although, in truth, the situation with the employer could be reconciled and the status quo ante could be restored. The employee's incentive to opt for front pay will, of course, depend on several factors: principally, the length of service remaining until retirement (the greater the length, the greater the front pay available); the amount of back pay available (which will depend on when the case is likely to get to trial or settle); and the advice his attorney gives him.

As noted, *see supra* note 1, the fee shifting provisions of the law do not apply in ADEA cases brought against federal em-

ployers;[15] accordingly, if the employee lacks the funds to finance a suit and to pay his attorney an hourly fee, his attorney will be working on a contingent fee basis. Given this fee arrangement, counsel may encourage the employee to opt for front pay damages, instead of reinstatement and back pay: the greater the front pay potential, the greater the encouragement. If the employee opts for front pay, he will, of course, have to overcome two obstacles. The first obstacle, erected by the employer, will be that the status quo ante can be reestablished—the employee can return to work. The employee will have to demonstrate to the court's satisfaction that conditions at the workplace have deteriorated to such a extent that he cannot return, or, as in this case, that the discriminatory acts have permanently disabled him.[16] The second obstacle, erected by the law (the duty to mitigate damages), will be that he will never be gainfully employed again.[17] It thus becomes apparent that in preparing the employee's case for trial, his attorney must create an atmosphere that makes reconciliation an impossibility and depicts his client as unemployable. This atmosphere, if it is to be an effective litigation strategy, must worsen progressively as the trial approaches, so that, if the case is not settled, the trial will eliminate the possibility of reconciliation and thus reinstatement as a realistic remedy.

I now turn to the federal employer's incentives—if front pay is allowed. This employer's primary incentive is obviously to maintain his job and its attendant opportunities intact. He may also be interested in getting rid of the employee. A quick cash settlement will likely accomplish both of these ends. In fact, the sooner the settlement the better; as the case drags on and bitterness begins to reign, the federal employer's chances of emerging unscathed diminish. The last thing he may want is a trial.

In my view, front pay—because it can provide an open-ended fund for settlement whereas back pay cannot—will inexorably lead to more frivolous suits. Without front pay and the open-ended settlement fund it can produce, the employer has little incentive to settle for cash; and, given that the employee's chances of retaining counsel on a contingent fee basis are nil, the employee has no leverage to produce a settlement. All the employee can do is to finance a losing cause. In sum, the inclusion of front pay in the ADEA's remedial scheme creates a setting for friction and conflict in the workplace and skews the incentives of the parties toward the dissolution of their working relationship—outcomes that are in direct conflict with Congress' stated intent to improve and to promote the employment of older persons based on their ability rather than age.[18]

## II.

We are faced with a case in which the remedies prescribed by Congress might not be adequate.[19] Nevertheless, by reversing

---

15. Because the federal claimant cannot shift the payment of his attorney's fees to the federal employer under section 633a, while the private employee can shift his litigation costs to the private employer under section 626(b), *see supra* note 1, it might be argued that the federal remedies prescribed by Congress under the ADEA are not adequate. The proper governmental body to gauge the adequacy of the federal employee's remedies (as well as to balance the relevant interests involved) under the ADEA, however, is Congress and not this court.

16. *See supra* note 10 and accompanying text.

17. *See supra* note 2.

18. Reinstatement of the employee, on the other hand, does effectuate the purposes of the ADEA by putting the employee back to work; and the provision of back pay "incidental to" reinstatement, arguably restores the employee to the status quo ante while at the same time deterring future discriminatory acts in the workplace on the part of the employer.

19. I say that the remedies might not be adequate because we can only surmise how the claimant, Lewis, would have approached this case had the law of this circuit forbade front pay. Had front pay not been available—meaning that Lewis' remedy would have been an order requiring his reinstatement (under conditions designed to protect his emotional well being) with back pay, *see supra* p. 1279—Lewis might have gone back to work. At the very least, his lawyer, and his psychiatrist, would have been faced with an entirely different setting—in which to advise him—than the setting our precedent seems to

the district court's denial of front pay, this court runs the risk of ignoring Congress' intention to limit the remedial provisions of the ADEA and the separation of powers ·doctrine that bars us from designing a new remedial scheme. Since this is not our proper adjudicative function, I dissent on the issue of front pay.

For the reasons stated above, I concur in part, and I dissent in part.

foster, *see id.* p. 1279. *See also supra* note 15 and accompanying text.