964 So.2d 1225 (2007)
Anthony ROBINSON
v.
ALABAMA CENTRAL CREDIT UNION.
1051327.
Supreme Court of Alabama.
March 23, 2007.
*1227 Cinda R. York of Campbell, Waller & Poer, LLC, Birmingham, for appellant.
James N. Nolan and Kary Bryant Wolfe of Walston, Wells & Birchall, LLP, Birmingham, for appellee.
STUART, Justice.
Anthony Robinson appeals the summary judgment entered by the Jefferson Circuit Court in favor of his former employer, Alabama Central Credit Union ("ACCU"), on his age-discrimination claim brought pursuant to the Alabama Age Discrimination and Employment Act, § 25-1-20 et seq., Ala.Code 1975 ("the AADEA"). We affirm.

I.
On February 15, 2000, Robinson was hired by ACCU for the position of "Vice President for Marketing and Business Development." Robinson was interviewed and selected for the position by Ron Haas, president and chief executive officer of ACCU; Haas would also serve as Robinson's direct supervisor during Robinson's tenure with the company. At the time of his hiring, Robinson was 48 years old.
Robinson's performance evaluations for the years he was employed by ACCU were generally satisfactory; however, they did note that there was room for improvement in some areas. Nevertheless, Robinson received merit pay raises and bonuses during this time.
In early 2004, ACCU hired an outside consultant, Glen Blickenstaff of Human Strategies, Inc., to advise management on issues related to employee development, performance management, and strategic planning. Blickenstaff worked with the ACCU senior management team, which included Robinson, to develop a comprehensive business plan and to improve the business's efficiency. This process ultimately resulted in Haas's decision, made sometime in the late summer of 2004, to restructure the senior management team. First, the position of vice president of operations was eliminated; in its place two regional vice-president positions were created. Joe Kiser, the then senior vice president, was also promoted to the newly created position of executive vice president and chief operating officer.
In approximately late September 2004, after consultation with Kiser and Blickenstaff, Haas decided to terminate Robinson's employment and to eliminate the position of marketing vice president on the senior management team. On October 4, 2004, Haas met with Robinson and terminated Robinson's employment with ACCU. *1228 Robinson was 52 years old at the time. On October 18, 2004, ACCU announced that Jennifer Denholm, who was 25 years old at the time, had been promoted to the newly created position of "Marketing and Business Development Coordinator."
On March 25, 2005, Robinson sued ACCU in the Jefferson Circuit Court alleging that the termination of his employment was an unlawful act of age discrimination prohibited by the AADEA. ACCU filed an answer denying the substance of Robinson's claim and, on March 2, 2006, moved for a summary judgment. Robinson responded and, on March 27, 2006, the trial court granted ACCU's motion and entered a judgment in its favor. Robinson moved the trial court to alter, amend, or vacate its judgment pursuant to Rule 59(e), Ala. R. Civ. P.; however, the trial court denied that motion. Robinson appealed.

II.
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
Additionally, we note that this Court has not yet considered the burden of proof applicable to an AADEA claim. However, federal courts considering the issue have noted that the purpose and prohibitions of the AADEA are similar to those of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and concluded that ADEA principles should therefore govern in AADEA cases as well. See, e.g., Bonham v. Regions Mortgage, Inc., 129 F.Supp.2d 1315, 1321 (M.D.Ala.2001); see also § 25-1-29, Ala.Code 1975 (expressly adopting as part of the AADEA the remedies, defenses, and statutes of limitations applicable to the ADEA). Accordingly, the federal courts have applied to AADEA claims the same evidentiary framework applied to federal age-discrimination claims. We agree that this framework, which was articulated by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is the proper means by which to review an AADEA claim. The evidentiary framework was summarized as follows in Dooley v. AutoNation USA Corp., 218 F.Supp.2d 1270, 1278 (N.D.Ala.2002):
"`First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's *1229 rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'
"Burdine, 450 U.S. at 252-53, 101 S.Ct. 1089 (citations omitted). At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to judgment as a matter of law on the plaintiff's claim. See Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997)."
Thus, in reviewing the summary judgment in favor of ACCU, we must determine whether Robinson established a prima facie case of age discrimination and, if so, whether ACCU articulated a legitimate, nondiscriminatory reason for discharging Robinson and, if so, whether Robinson then presented substantial evidence to create a genuine issue of material fact as to whether ACCU's proffered reason for his discharge is pretextual.

III.
ACCU, in its motion for a summary judgment, argued both that Robinson failed to establish a prima facie case and that, even if he did establish a prima facie case, he failed to establish that ACCU's stated reason for his discharge was pretextual. In granting the motion, the trial court based its decision on the second argument, stating:
"Assuming [Robinson's] evidence is sufficient to create an issue of material fact that precludes summary judgment as to [Robinson's] prima facie case, [ACCU] nevertheless articulated legitimate, nondiscriminatory reasons to justify [Robinson's] termination, which [were] not related to age and which [were] not rebutted by substantial evidence by [Robinson]."
We agree. Even assuming, for the sake of argument, that Robinson did establish a prima facie case of age discrimination, we affirm the judgment of the trial court because ACCU has articulated a legitimate reason for Robinson's discharge, which he has failed to prove was pretextual.
ACCU has stated its reason for terminating Robinson's employment as follows:
"[Robinson's employment] was terminated as part of a restructuring in the Fall of 2003. After carefully analyzing [Robinson's] position, the functions [Robinson] was performing and how he was performing those functions, Ron Haas determined that it would be beneficial to the Credit Union to outsource many of [Robinson's] primary functions and have a lower-grade marketing person to merely coordinate and assist the outside agency to perform those functions. [Robinson's] position was eliminated and to date, has not been re-instated."
Robinson does not dispute that, if true, this would qualify as a legitimate, nondiscriminatory reason. The burden, therefore, shifted to him to produce evidence indicating that ACCU's stated reason for discharging him is pretextual.
Robinson first argues that over time ACCU has changed the reason it has given for terminating his employment and that its doing so accordingly presents a genuine issue of material fact as to the *1230 truthfulness of that reason. This Court has previously held that a judgment as a matter of law is inappropriate when evidence exists indicating that an employer has given contradictory reasons for an employee's discharge. See, e.g., Flint Construction Co. v. Hall, 904 So.2d 236, 252 (Ala.2004), a retaliatory-discharge case in which this Court held that "a [judgment as a matter of law] is not appropriate where, as here, the employer subsequently contradicts the reason it initially gave for the discharge, thereby at least implicitly disavowing it or by such action acknowledging its pretextual status." In his brief to this Court, Robinson states this argument as follows:
"To establish pretext, the Court need look no farther than the inconsistent and contradictory reasons given for [Robinson's] termination. Since [Robinson's] termination, defendant has offered a variety of different reasons:
"(1) October 5, 2004  Denying that Robinson `had done anything to cause [his] termination . . . and that this wasn't about Tony. Simply the credit union is going in a new direction.'
"(2) October 27, 2005  `[Robinson] was terminated as part of a restructuring in the Fall of 2003.'
"(1) December 21, 2005  `The primary reason was cost; and then of course we had some performance issues as well.'
"(4) March 2, 2006  `Ron Haas was displeased with Robinson's lack of initiative and the extensive and expens[ive] use of outside vendors.'
"Based on these direct quotations alone, [ACCU] cannot decide whether it fired [Robinson] because of restructuring, performance problems, or some combination of both. Because [ACCU] cannot itself provide a consistent explanation for its actions, whatever reason it currently gives is unworthy of credence and thus substantial evidence of pretext."
(Citations to record omitted.)
We cannot agree that these reasons are "inconsistent and contradictory." To the contrary, the evidence cited by Robinson appears to be entirely consistent with ACCU's stated reason for terminating Robinson's employment  that, after reviewing his job duties and performance, it was decided "that it would be beneficial to the Credit Union to outsource many of [Robinson's] primary functions and have a lower-grade marketing person to merely coordinate and assist the outside agency to perform those functions."
It is instructive to compare the facts in this case with those in Flint. In Flint, the employee was initially told that his employment was being terminated because of a lack of available work. However, the employer subsequently admitted that there was, in fact, no such lack of work and stated that its real reason for discharging the employee was that he had too many absences and was gambling in casinos when he was supposed to be working or undergoing medical treatment. Accordingly, this Court concluded that the employer was not entitled to a judgment as a matter of law because the employer itself had acknowledged the pretextual status of the initial reason given for the employee's discharge. However, ACCU, unlike the employer in Flint, has never disavowed a reason it has given for terminating Robinson's employment. ACCU has consistently maintained that the decision to terminate Robinson's employment was a business decision made as part of a restructuring process. That Robinson's performance was considered in the context of making that decision in no way indicates that that reason is anything other than legitimate. Robinson is not entitled to relief on this basis.
*1231 Robinson next argues that there is a genuine issue of material fact as to the truthfulness of the reason given by ACCU for the termination of his employment because, he claims, the facts in the record do not support that reason. Robinson notes that ACCU has claimed it eliminated his position so that it could outsource more of its marketing work; however, he notes, ACCU has simultaneously claimed that management was displeased with him for that very reason  because he outsourced too much of the marketing work. Thus, he concludes, that reason must be pretextual.
Again, we cannot agree with Robinson's conclusion that this evidence is inconsistent. As Haas testified in his deposition, "[Robinson] was outsourcing everything. So after we looked at it; we said, well, look, you know, we'd be better off [if his employment was terminated]. Everything's already outsourced." Or, as ACCU stated the issue in its brief: "[T]he efficiencies and cost-savings which ACCU anticipated when it created the VP position and hired Robinson were not being realized." Thus, the fact that Robinson was criticized for doing too much outsourcing does not cast aspersions on the legitimacy of ACCU's decision to terminate his employment and to do more outsourcing. It appears that ACCU simply decided that it did not need to pay a vice president to coordinate outsourcing when a lower-grade employee could do the same.[1]
Robinson also argues that there is no credible evidence indicating that his performance was in any way deficient, stating: "The only evidence that [ACCU] has produced concerning Robinson's poor performance is Haas's testimony, which is contradicted by Haas's own evaluation of Robinson's performance." See Wascura v. City of South Miami, 257 F.3d 1238, 1245 (11th Cir.2001) ("[T]he lack of complaints or disciplinary reports in an employee's personnel file may support a finding of pretext. . . ."). However, the record does not support Robinson's argument. Although it is true that Robinson's evaluations were generally laudatory and that he received merit-based bonuses and pay increases, those same evaluations provide some support for the criticism voiced by Haas after Robinson's employment was terminated. For example, his February 14, 2003, performance evaluation included the following critiques:
"I encourage you to be more timely meeting with branches and lenders on all promotions."
"Tony does a great job carrying through on projects assigned to him. But, you need to reach another level."
"Tony must seek out new responsibilities and take on more risk and challenges that lie outside your responsibility."
"You should not be afraid of applying more creative solutions to marketing programs. As explained, one major goal of the credit union upon your employment was to reduce outside resources. . . . The credit union incurred considerable expense in the purchase [of] special computer equipment to meet your needs. This equipment must be better utilized."
"Tony should take a stronger leadership role in management team situations."
"Tony's presentations have always been good. But often, I need to encourage you to do more."
*1232 Robinson's April 1, 2004, performance evaluation likewise contained the following statements:
"Tony does a satisfactory job but at times he has a tendency to assume all details will be handled without his follow up. Tony can be counted on to get most tasks done, but not necessarily to go the EXTRA MILE and push beyond the limits of your instruction."
(Capitalization in original.)
"Tony has other interests beyond ACCU. These interests can be mutually beneficial to our organization if they are communicated and planned well in advance. This has created difficulty in the past and must be addressed early this year to avoid a breakdown in communication."
"[Initiative] continues to be Tony's weak area. He does a great job in following through with assigned or specific tasks. The credit union must tap his ability to perform employee and director development. Tony must achieve a higher level. It is essential for Tony to step forward and demonstrate much more initiative in assisting in employee training and business development."
These statements not only refute Robinson's claim that there was no evidence outside Haas's deposition testimony indicating that his performance was deficient, but also buttress the reason given by ACCU for terminating his employment. As early as February 14, 2003, Robinson was told that one of the reasons he was hired was to reduce the credit union's dependence on outside contractors. Yet the evidence indicates that ACCU's expenses for outside contractors in fact increased during Robinson's tenure as vice president for marketing. Robinson has not presented substantial evidence to create a genuine issue of material fact as to whether ACCU's proffered reason for his discharge is pretextual; therefore, the summary judgment entered in favor of ACCU was appropriate.

IV.
ACCU moved for a summary judgment on Robinson's AADEA claim, arguing both that Robinson failed to establish a prima facie case of age discrimination and that he failed to rebut ACCU's proffered legitimate reason for his discharge. We need not consider whether Robinson established a prima facie case, however, because he has not put forth substantial evidence that would allow a reasonable fact-finder to conclude that ACCU's stated reason for terminating his employment was pretextual. Accordingly, ACCU was entitled to a judgment as a matter of law, and the summary judgment was proper.
AFFIRMED.
SEE, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and LYONS, WOODALL, SMITH, and MURDOCK, JJ., concur in the result.
MURDOCK, Justice (concurring in the result).
I question whether the varying explanations given by ACCU for terminating Robinson's employment do not create a genuine issue of fact as to whether any one of those explanations is pretextual. I concur in the result, however, because Robinson has failed to present substantial evidence that he was replaced in his position by Jennifer Denholm, as opposed to his position being eliminated, with Denholm and others dividing the responsibilities previously assigned to Robinson's position.
LYONS, J., concurs.
NOTES
[1] Robinson and ACCU dispute whether, in fact, Jennifer Denholm replaced Robinson after his employment was terminated; however, it is undisputed that she was paid less than half of Robinson's $65,000 salary.