THOMAS, Judge.
 

 This is an appeal from a summary judgment in an action brought pursuant to the Alabama Age Discrimination in Employment Act (“AADEA”), codified at Ala.Code 1975, § 25-1-20 et seq.
 

 Facts and Procedural History
 

 Danny Lambert was employed for Mazer Discount Home Centers, Inc. (“Mazer”), for almost 29 years. During the lengthy term of his employment, Lambert worked his way up in the company and was eventually promoted to the position of vice president of marketing. As vice president of marketing, Lambert’s duties included purchasing duties for the building-supply and kitchen-and-bath departments of Mazer; “deal buying,” which describes the task of seeking out and negotiating the purchase of closeout merchandise; and media planning and buying or, in other words, planning and purchasing times for and types of advertising for Mazer products and stores.
 

 Mazer is a family-owned business, and its president was originally J.B. Mazer. In 2005, however, J.B. retired from the office of president and his son, Mike Mazer, took over. According to Lambert, Mike’s management style differed from that of J.B. Lambert said that Mike tended to “micromanage” more than J.B.
 

 Under the presidency of both J.B. and Mike, vice presidents like Lambert were treated differently than other employees. For example, vice presidents were not required to turn in time sheets or otherwise account for their time like other employees. Mike explained that the vice presidents were in positions of trust and that they were officers of the company, so they were not required to account for their time
 
 *21
 
 because they were expected to always have the interests of the company at heart. In addition, although J.B. and Mike always performed at least yearly performance reviews of the vice-president-level employees, the reviews were informal and oral; no written records reflecting the substance of those reviews or any other conversations regarding performance were written or made a part of a vice president’s personnel file.
 

 Lambert admitted that Mike had spoken with him on more than one occasion after Mike took over as president in 2005 regarding the time Lambert spent away from the office. Lambert had a vacation home in Destín, Florida, which he rented when he was not using it, and another piece of rental property in Santa Rosa, Florida. Both properties required maintenance periodically, and Lambert traveled to the area where the properties are located approximately twice per month. Lambert also purchased a home in the Birmingham area in 2005; that home apparently required extensive renovation. Lambert’s rental-property maintenance and his home renovations appeared to Mike to shift Lambert’s focus away from Mazer business even when he was at work. However, Lambert testified that “he wouldn’t know” whether Mike was irritated or concerned over Lambert’s performance as a result of the focus Mike felt Lambert placed on his rental property and home renovations.
 

 During early 2006, issues arose in the kitchen-and-bath department regarding kitchen cabinets, which Lambert was responsible for ordering. The department had difficulty meeting customer orders on several occasions because certain popular cabinets were not in stock. However, the department also suffered from a problem with overstocked items that would not sell. According to Mike, Lambert’s failure to properly order the right cabinets at the right times had caused the problems that manifested themselves in the kitchen-and-bath department in early 2006.
 

 Lambert admitted that Mike had expressed displeasure over the problems in the kitchen-and-bath department. He said that Mike had specifically criticized him for ordering the wrong types of building materials or cabinets. Lambert testified that he knew that Mike was unhappy with him over the issues with the out-of-stock kitchen cabinets.
 

 In addition, Mike testified that he became increasingly dissatisfied with Lambert’s handling of his advertising duties. Mike said that he wanted to move away from radio, to move toward more “high-dollar” spots on television, to increase the production values of the television commercials, and to take a fresh approach to the way print ads were used by the company. Mike specifically stated that he felt that Lambert had not been proactive in looking for new ways to be effective in his advertising duties. Lambert admitted that Mike had communicated his desire for “high-dollar” spots on television and a desire to move away from radio advertising; the only other issue related to advertising that Lambert admitted that Mike had complained to him about was the amount of time he spent at lunches with his advertising contacts.
 

 By May 2006, Mike had become so dissatisfied with Lambert that he decided to discharge him from his employment with Mazer. He telephoned Lambert and arranged for a meeting with him on May 3, 2006. When Lambert met with Mike, the company controller, Dan Ward, was also in attendance. Mike informed Lambert that he was being discharged, and Mike offered Lambert a severance package and a termination agreement. Lambert said that Mike did not tell him why he was being
 
 *22
 
 discharged; however, Ward testified that Mike began to explain his reasons but Lambert told Mike that he did not want to hear them. Lambert did not accept the severance package, and he did not sign the termination agreement. At the time he was discharged from his employment, Lambert was 47 years old.
 

 After he discharged Lambert, Mike divided and reassigned Lambert’s duties to existing personnel. Mike testified that he did not hire anyone or promote anyone to take over Lambert’s position as vice president of marketing. David Smythia, who served as executive vice president, was assigned Lambert’s advertising duties. David Cobbin was promoted from location manager to purchasing manager, and he took over purchasing duties for the kitchen-and-bath department. Mike took over Lambert’s deal-buying duties.
 

 After receiving a right-to-sue letter from the Equal Employment Opportunity Commission(“EEOC”) Lambert sued Mazer, alleging that he had been discharged from his employment in violation of the AAD-EA. Mazer answered Lambert’s complaint and denied liability. Mazer then moved for a summary judgment on Lambert’s age-discrimination claim, which the trial court granted. In its judgment, the trial court determined that Lambert had failed to present evidence sufficient to establish a prima facie case of age discrimination under the AADEA and that, even if he had, he had failed to present sufficient evidence demonstrating that Mazer’s proffered legitimate, nondiseriminatory reason for Lambert’s discharge was pretextual. Lambert appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
 

 Standard of Review
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991).
 

 Age Discrimination under the AADEA
 

 This case presents only the second time that an Alabama appellate court has considered the
 
 merits
 
 of a claim brought under the AADEA.
 
 [1]
 

 See Robinson v.
 
 Ala>
 
 *23
 

 bama Cent. Credit Union,
 
 964 So.2d 1225 (Ala.2007) (affirming a summary judgment in favor of an employer on an employee’s age-discrimination claim brought pursuant to the AADEA). The AADEA prohibits employers, employment agencies, and labor organizations from “discriminat[ing] in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment.” § 25-1-21. In
 
 Robinson,
 
 our supreme court, after considering the holdings of federal courts in Alabama, adopted the same burden-shifting analysis applied to federal age-discrimination claims brought under the federal Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. § 621 et seq.
 
 Robinson,
 
 964 So.2d at 1228-29.
 

 “[Fjederal courts considering the issue [of the burden of proof applicable to an AADEA claim] have noted that the purpose and prohibitions of the AADEA are similar to those of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (‘ADEA’), and concluded that ADEA principles should therefore govern in AADEA cases as well. See, e.g.,
 
 Bonham v. Regions Mortgage, Inc.,
 
 129 F.Supp.2d 1815, 1321 (M.D.Ala.2001); see also § 25-1-29, Ala.Code 1975 (expressly adopting as part of the AADEA the remedies, defenses, and statutes of limitations applicable to the ADEA). Accordingly, the federal courts have applied to AADEA claims the same evidentiary framework applied to federal age-discrimination claims. We agree that this framework, which was articulated by the Supreme Court of the United States in
 
 McDonnell Douglas
 
 Corp.
 
 v. Green,
 
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and
 
 Texas Department of Community Affairs v. Burdine,
 
 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is the proper means by which to review an AADEA claim. The evidentiary framework was summarized as follows in
 
 Dooley v. AutoNation USA Corp.,
 
 218 F.Supp.2d 1270, 1278 (N.D.Ala.2002):
 

 “ ‘ “First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant ‘to articulate some legitimate, nondiscriminatory reason for the employee’s rejection.’ Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.”
 

 “
 
 ‘Burdine,
 
 450 U.S. at 252-53, 101 S.Ct. 1089 (citations omitted). At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive.
 
 St. Mary’s Honor Ctr. v. Hicks,
 
 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff does
 
 *24
 
 not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer’s articulated reasons is pretextual, the employer is entitled to judgment as a matter of law on the plaintiffs claim.
 
 See Combs v. Plantation Patterns,
 
 106 F.3d 1519, 1529 (11th Cir.1997).’ ”
 

 Robinson,
 
 964 So.2d at 1228-29.
 

 In the summary-judgment order appealed from in
 
 Robinson,
 
 the trial court had assumed that the plaintiff had established a prima facie case of age discrimination and had concluded that a summary judgment was appropriate because the plaintiff had failed to present sufficient evidence that the reason for the discharge proffered by the employer was pretextual.
 
 Id.
 
 at 1229. The supreme court, likewise, assumed that the plaintiff in
 
 Robinson
 
 had established a prima facie case and analyzed only whether the plaintiff had presented sufficient evidence to create a genuine issue of material fact regarding whether the reason for the plaintiffs discharge proffered by the employer was pre-textual.
 
 Id.
 
 at 1230-32. Thus, the
 
 Robinson
 
 court did not set out the elements required to make out a prima facie case of age discrimination under the AADEA. Because the trial court in the present case determined both that Lambert had failed to present evidence sufficient to establish a prima facie case and that Lambert had failed to create a fact question regarding whether the proffered legitimate, nondiscriminatory reason for his discharge was pretextual, we will address both the establishment of a prima facie case under the AADEA and the demonstration of pretext under the AADEA.
 

 The Prima Facie Case
 

 In an AADEA case, our supreme court has held, a plaintiff must first establish a prima facie case of discrimination.
 
 Robinson,
 
 964 So.2d at 1228. Because our supreme court agreed that cases applying the ADEA should govern the application of the AADEA, we turn to federal cases applying the ADEA to determine exactly what a plaintiff must prove to establish a prima facie case of age discrimination. Generally, a plaintiff seeking to establish a prima facie case of age discrimination must “prove that (1) plaintiff was a member of a protected group, (2) plaintiff was discharged, (3) plaintiff was replaced with a person outside the protected group, and (4) plaintiff was qualified to do the job.”
 
 Stanfield v. Answering Serv., Inc.,
 
 867 F.2d 1290, 1293 (11th Cir.1989).
 

 The trial court in the present case determined that Lambert had not established the elements of a prima facie case of age discrimination because he had failed to produce evidence that Mazer replaced him with a younger person. In its summary-judgment order, the trial court specifically noted that, in some federal circuits, an employee is not considered to have been replaced when his or her duties are distributed among existing employees who have been performing the same, similar, or related work.
 
 See Barnes v. GenCorp., Inc.,
 
 896 F.2d 1457, 1465 (6th Cir.1990). Although the trial court did not so indicate, the fact that Mazer reassigned Lambert’s duties to at least two other employees who were older than him — Smythia and Mike — also weighs against the establishment of a prima facie case.
 
 Settle v. K Mart Corp.,
 
 857 F.Supp. 955, 958 (M.D.Fla.1994) (stating that because there was proof that the age-discrimination plaintiff was replaced by someone substantially older, the plaintiff had failed to present the court with evidence raising an inference of age discrimination).
 

 Lambert takes issue with the trial court’s adherence to the requirement that he prove that he was
 
 replaced
 
 by a youn
 
 *25
 
 ger employee. Lambert points out that federal age-discrimination cases have not limited themselves solely to one formulation of the elements of a prima facie case.
 
 See Stanfield,
 
 867 F.2d at 1294 (stating, in the context of an age-discrimination case under the ADEA, that proving that one was replaced by a younger person “is not essential” and that “ ‘the particularly amorphous nature of age discrimination counsels against rigid application of [the] test’ ” (quoting
 
 Pace v. Southern Ry. Sys.,
 
 701 F.2d 1383, 1387 (11th Cir.1983))). Based upon our review of several age-discrimination cases, we conclude that Lambert is correct in asserting that his failure to prove that he was replaced by a younger person does not, in and of itself, prevent the establishment of a prima facie case of age discrimination.
 

 In fact, in cases involving reductions in the workforce or the elimination of a position by the employer, a plaintiff lacking direct evidence of age discrimination would be almost unable to prove his or her case if the requirement of showing his or her replacement by a younger individual were considered imperative to the establishment of a prima facie case.
 
 See, e.g., Barnes v. Southwest Forest Indus., Inc.,
 
 814 F.2d 607, 609 (11th Cir.1987). In recognition of this fact, the federal courts have developed an alternative test for the establishment of a prima facie case of age discrimination in those types of cases:
 

 “[T]his Circuit has held that a plaintiff in a job-reduction case can establish a pri-ma facie case by demonstrating: (1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified to assume another position at the time of discharge or demotion; and (3) evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.
 
 Williams v. General Motors Carp.,
 
 656 F.2d 120,129 (5th Cir. Unit B 1981),
 
 cert. denied,
 
 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Although this test is not ‘the alpha and omega of possible tests in the age discrimination context,’
 
 Pace [v. Southern Railway
 
 System], 701 F.2d [1383,] 1387 [ (11th Cir.1983) ], it does establish the proposition that the plaintiffs burden is to introduce evidence that supports a reasonable inference of intentional age discrimination.”
 

 Barnes,
 
 814 F.2d at 609-10 (footnote omitted);
 
 see also Benson v. Tocco, Inc.,
 
 113 F.3d 1203, 1208 (11th Cir.1997);
 
 Mitchell v. Worldwide Underwriters Ins. Co.,
 
 967 F.2d 565, 567-68 (11th Cir.1992).
 

 Mike testified that he did not replace Lambert by hiring anyone for or promoting anyone to the position of vice president of marketing and that he instead divided Lambert’s duties among three existing employees. Mike did not testify, and the evidence does not establish, that Mike’s reason for discharging Lambert was the need to eliminate Lambert’s position. The Eleventh Circuit Court of Appeals has indicated that the alternative test for establishing a prima facie case is limited to true reduction-in-force or position-elimination cases.
 
 Munoz v. Oceanside Resorts, Inc.,
 
 223 F.3d 1340 (11th Cir.2000) (recognizing a distinction between workforce-reduction cases and termination cases). However, federal courts have not always required strict adherence to the elements of a prima facie case, indicating that, although the typical method of demonstrating a prima facie case involves a showing that the employer replaced an older worker with a younger one, the courts must be “open to alternative methods of proof of a prima facie case” and that the determination hinges on “whether the plaintiff has presented sufficient evidence to provide a ba
 
 *26
 
 sis for an inference that age was a factor in the employment decision.”
 
 Pace v. Southern Ry. Sys.,
 
 701 F.2d at 1387;
 
 see also Stanfield,
 
 867 F.2d at 1294. Thus, although we agree with Lambert that the trial court erred in strictly applying the original elements of a prima facie case to Lambert’s age-discrimination claim and by concluding that Lambert’s failure to prove that he was replaced by a younger person prevented him from establishing a prima facie case, we must now consider whether Lambert’s evidence “provide[s] a basis for an inference that age was a factor in the employment decision,”
 
 Pace,
 
 701 F.2d at 1387, and, thus, whether Lambert did, in fact, establish a prima facie case of age discrimination.
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003) (noting that we may affirm a trial court’s judgment on any valid legal ground in most circumstances).
 

 Because the alternative test allows an age-discrimination plaintiff the opportunity to establish a prima facie case by presenting “evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue,”
 
 Barnes,
 
 814 F.2d at 609, we will consider Lambert’s evidence under that test. Both parties agree that Lambert has established the first and second elements of the alternative test, because Lambert was qualified for his position and he was a member of the protected group that suffered an adverse employment decision.
 
 See id.
 
 We turn our focus, then, to the third element of the alternative test: whether Lambert presented evidence from which a reasonable fact-finder could conclude that Mazer intended to discriminate against him on the basis of his age when Mike discharged him from his employment.
 
 See id.
 
 To do that, we must consider whether Lambert presented “evidence that supports a reasonable inference of age discrimination.”
 
 Id.
 
 at 610.
 

 In order to make the determination whether an age-discrimination plaintiff has presented enough evidence to satisfy his or her burden of presenting a prima facie case, courts have considered circumstantial evidence of discrimination, including comments made by employers or decision makers that indicate an age-related bias.
 
 See Corbin v. Southland Int’l Trucks,
 
 25 F.3d 1545, 1549 (11th Cir.1994);
 
 see also Hunter v. Mobis, Alabama, LLC,
 
 559 F.Supp.2d 1247, 1257 (M.D.Ala.2008) (considering comments indicating a pregnancy-related bias in a pregnancy-discrimination case to evaluate whether the plaintiff established a prima facie case). “[A] comment [by an employer or decision maker], which was narrowly tailored to a particular event, might constitute some evidence of discrimination for a case based on a separate event; the statement, however, must then be seen
 
 not
 
 as direct evidence of discrimination, but as circumstantial evidence of discrimination”; circumstantial evidence, unlike direct evidence, “suggests — but does not
 
 prove
 
 — & discriminatory motive.”
 
 Burrell v. Board of Trs. of Georgia Military Coll.,
 
 125 F.3d 1390, 1393 n. 7 and 1393 (11th Cir.1997). However, the courts have also held that “stray remarks” or “isolated comments” unrelated to the employee or discharge at issue are not sufficient to create a jury question in an age-discrimination case.
 
 Cone v. Longmont United Hosp. Ass’n,
 
 14 F.3d 526, 531 (10th Cir.1994);
 
 see also Brook v. City of Montgomery,
 
 916 F.Supp. 1193, 1204-05 (M.D.Ala.1996). The age-discrimination plaintiff must “demonstrate [that] a nexus exits between th[e] allegedly discriminatory statements and the [employer’s] decision to terminate [him or] her.”
 
 Cone,
 
 14 F.3d at 531;
 
 Brook,
 
 916 F.Supp. at 1204-05.
 

 
 *27
 
 Lambert testified that Mike had made statements indicating an age bias. Mike admitted that he had made some, but not all, of the statements Lambert attributed to him. For purposes of review of the summary judgment, we must consider the facts in the light most favorable to Lambert,
 
 see DPF Architects,
 
 792 So.2d at 372, and we therefore consider all the alleged statements as if Mike had indeed made them.
 
 Cone,
 
 14 F.Bd at 531.
 

 Lambert testified that Mike had said of Art Levine, who was about 65 years of age, that he desired someone younger and more energetic in his position. According to Lambert, Mike also commented that Art “wasn’t very active.” Regarding another employee, Sam Lorino, whose age does not appear in the record but who was, by agreement of the parties, over the age of 40, Lambert testified that Mike had stated that Lorino was “past his prime” and also mentioned that he, too, was not “active.”
 

 Those statements, although capable of being perceived as derogatory and inappropriate, were not made regarding or directed toward Lambert. They were comments made about other employees in other positions than Lambert’s and did not directly bear on the decision to discharge Lambert. Thus, they appear to be “stray remarks,” which are inadequate to present sufficient evidence of a discriminatory intent.
 
 Cone,
 
 14 F.3d at 531;
 
 Brook,
 
 916 F.Supp. at 1204-05.
 

 Lambert also relies on what he terms Mike’s “conflicting testimony” regarding the reason for Lambert’s discharge. Lambert relies on a statement Mike made in a 2008 deposition in a defamation action brought by another discharged employee. In the deposition, Mike was asked why Lambert was discharged, to which he responded “reorganization.” When asked if there were any other reasons for discharging Lambert, Mike replied “no.” Mike had testified in his deposition in the present case, had indicated in his written discovery responses, and had indicated in Mazer’s EEOC position paper that Lambert’s discharge was motivated by dissatisfaction with Lambert’s performance of both his purchasing and advertising duties. Mazer argues that the two reasons given were not truly conflicting.
 

 Our supreme court considered a similar argument in
 
 Robinson,
 
 in which the employer had originally given corporate restructuring as its reason for the employee’s discharge.
 
 Robinson,
 
 964 So.2d at 1229-30. Later, the employer indicated that it had also become dissatisfied with the employee’s work and that his performance had figured into its decision to discharge him.
 
 Id.
 
 at 1230. In affirming the summary judgment in favor of the employer, our supreme court explained that the two reasons given by the employer were not, in fact, “conflicting” and did not amount to evidence that the employer had disavowed the original reason or otherwise indicated that the original reason was a pretext.
 
 Id.
 

 Notably, Mike maintained throughout this action that he had discharged Lambert after becoming increasingly dissatisfied with his performance, which Mike felt was a result of Lambert’s outside interests and his time away from the office pursuing them. After Lambert’s discharge, Mike did restructure some of the upper-level management of the company by reassigning certain of Lambert’s duties to Smythia, the existing executive vice president, and to himself; the bulk of Lambert’s purchasing duties were assigned to a lower-level employee, who performed those duties in addition to his former duties. Mike’s comment in an unrelated case that he discharged Lambert because of restructuring
 
 *28
 
 appears nothing more than a shorthand way to explain the changes in the Mazer management team and does not appear to indicate that Mike was disavowing the basis for the decision to discharge Lambert.
 

 Lambert’s final argument that he has produced sufficient circumstantial evidence that his age was a motivating factor for his discharge, in order to establish a prima facie case of age discrimination, is that Mazer redistributed his duties to a younger employee. Although we agree that reassigning the duties of a discharged employee to a younger employee might evidence age discrimination in some cases,
 
 Wallis v. J.R. Simplot Co.,
 
 26 F.3d 885, 891 (9th Cir.1994) (holding that an age-discrimination plaintiff established a prima facie case when he “claimed that twelve of the thirteen functions he performed were retained at the corporate level, and that
 
 all his duties
 
 were assigned to persons younger and less qualified than he” (emphasis added)), the facts of the present case do not evidence such discrimination. Although Cobbin, who assumed Lambert’s purchasing duties for the kitchen-and-bath department, is younger than Lambert, Smythia and Mike, who both assumed some of Lambert’s duties, are not. In fact, Smythia, at age 66, is significantly older than Lambert. Many of Mazer’s upper-level employees are older than Lambert. The evidence indicates that Mazer has a number of older upper-level employees: Ward, the company treasurer and controller is 64; Miriam Deal, who performs certain advertising duties under Smythia’s direction, is in her 60s; and Peggy Martin, who serves as a purchasing assistant, is 67. At best, Lambert’s evidence amounts to evidence indicating that Mazer selected one younger person and two older persons to take over the tasks that Mike determined Lambert could no longer adequately perform. The mere fact that one of the persons to whom one-third of Lambert’s duties were reassigned is younger than Lambert does not amount to substantial evidence demonstrating that Mazer’s decision to discharge Lambert from his employment was motivated by his age.
 

 We conclude, therefore, that Lambert has not proven a prima facie case of age discrimination under the AADEA, even based on the alternative test expressed by the Eleventh Circuit Court of Appeals in
 
 Barnes.
 
 That is, Lambert’s evidence is not sufficient evidence from “which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.”
 
 Barnes,
 
 814 F.2d at 609. The trial court properly entered a summary judgment, even if it erred by strictly applying the original elements of a prima facie case.
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Sens. Found., P.C.,
 
 881 So.2d at 1020.
 

 Pretext
 

 However, even if Lambert had established a prima facie case of age discrimination, we would still conclude that the trial court’s summary judgment was properly entered. As noted above, once a plaintiff in an age-discrimination case establishes a prima facie case, the burden of production shifts to the employer, who must then proffer a legitimate, nondiserim-inatory reason for the employee’s discharge.
 
 Robinson,
 
 964 So.2d at 1228-29;
 
 see also Stanfield,
 
 867 F.2d at 1294. Mazer proffered as its basis for Lambert’s discharge Mike’s dissatisfaction with Lambert’s performance in his purchasing and advertising duties. Lambert was then required to present substantial evidence creating a fact question regarding whether age was, in fact, the basis for Mazer’s decision to discharge him or that the reason proffered by Mazer — dissatisfaction
 
 *29
 
 with Lambert’s performance- — was a mere pretext for age discrimination.
 
 Robinson,
 
 964 So.2d at 1229;
 
 see also Stanfield,
 
 867 F.2d at 1294.
 

 Much of the circumstantial evidence discussed above in the discussion of the prima facie case is also relevant to the consideration whether Lambert met his burden of creating a genuine issue of material fact regarding his assertion that Mazer’s stated reason for his discharge was a mere pretext. Because we have concluded that Lambert’s circumstantial evidence — the alleged comments by Mike indicating age-related bias, the contention that Mike had given conflicting reasons for Lambert’s discharge, and the reassignment of a portion of Lambert’s duties to a younger employee — is not evidence from which a reasonable fact-finder could infer a discriminatory intent, we will not discuss that evidence further. In addition to the circumstantial evidence discussed in the previous section, Lambert argues that the lack of documentary evidence to support Mazer’s assertion of a performance-based discharge creates a question of fact regarding the validity of the proffered reason. As Lambert argues, federal courts have held that the lack of documentation to support performance or disciplinary issues with an employee can support an inference that the performance- or discipline-based reason is a pretext.
 
 Lloyd v. Georgia Gulf Corp.,
 
 961 F.2d 1190, 1194-95 (5th Cir.1992);
 
 see also Everett v. Lake Martin Area United Way,
 
 46 F.Supp.2d 1238, 1237 (M.D.Ala.1999) (applying same legal principle to a case involving discrimination on the basis of one’s filing for bankruptcy protection under 11 U.S.C. § 525(b)).
 

 However, the Eleventh Circuit Court of Appeals has also held that, when there is no “formal review process,” the lack of documentation of complaints, negative reviews, or disciplinary warnings in a personnel file is not sufficient evidence to show pretext.
 
 Wascura v. City of South Miami,
 
 257 F.3d 1238, 1245 (11th Cir.2001) (involving a case of discrimination under 42 U.S.C. § 12112(b)(4), a part of the Americans With Disabilities Act). All the evidence in the present case indicates that the review process for vice-president-level employees at Mazer was informal and oral; without fail, each person with knowledge of the process testified that Mike never issued written reviews. In addition, Lambert himself testified that Mike
 
 had counseled him
 
 on missing work and
 
 had expressed displeasure
 
 over certain of his purchasing practices. Lambert specifically stated that he knew Mike was unhappy about the situation with the kitchen cabinets. The fact that Mike also indicated satisfaction with Lambert during the period before his discharge is not sufficient to raise a question of fact regarding pretext.
 
 See Robinson,
 
 964 So.2d at 1231-32 (indicating that positive comments among the negative ones in performance evaluations did not suffice to establish that the employer’s proffered reason for discharge was pretextual).
 

 We conclude, therefore, that Lambert also failed to present substantial evidence creating a fact question regarding whether Mazer’s stated basis for Lambert’s discharge was a mere pretext for age discrimination. Lambert admitted having been counseled about and having been aware of Mike’s dissatisfaction with the performance of at least some of his duties in the year before his discharge. A review of the evidence submitted by both parties convinces us that the trial court’s decision to enter a summary judgment in favor of Mazer on the pretext issue was correct.
 

 Conclusion
 

 In conclusion, we have determined that Lambert failed to establish a prima facie
 
 *30
 
 case of age discrimination under the alternative test set out by the Eleventh Circuit Court of Appeals in
 
 Barnes.
 
 Lambert’s evidence was not sufficient to lead a reasonable fact-finder to conclude that Mazer intended to discriminate against Lambert on the basis of his age when Mike decided to discharge Lambert. In addition, even if Lambert had established a prima facie case of age discrimination, we conclude that Lambert was unable to create a genuine issue of material fact regarding whether Mazer’s proffered reason for the discharge — dissatisfaction with Lambert’s performance of his purchasing and advertising duties — was a mere pretext for age discrimination. Accordingly, we affirm the summary judgment entered in favor of Mazer.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . In several other cases, appellate courts have considered issues relating to an AADEA claim, such as the limitations period applicable to an AADEA claim,
 
 see Byrd v. Dillard’s, Inc.,
 
 892 So.2d 342 (Ala.2004), and
 
 Hedegard v. BE & K,
 
 923 So.2d 315 (Ala.Civ.App.2005);
 
 *23
 
 the effect of a settlement or release of another claim on an AADEA claim,
 
 see Dunlap v. Regions Fin. Corp.,
 
 983 So.2d 374 (Ala.2007) (affirming a summary judgment in favor of an employer on an age-discrimination claim brought under the AADEA on the basis of a release signed by the employee), and
 
 Whitson v. City of Hoover,
 
 14 So.3d 98 (Ala.2009) (reversing the dismissal of an AADEA claim because a workers’ compensation settlement did not release the claim); the timing of the consideration of both sovereign and state-agent immunity in a case brought under the AADEA,
 
 see Ex parte Auburn Univ.,
 
 6 So.3d 478 (Ala.2008); and whether federal-law claims brought in federal court tolled a state-law claim brought under the AADEA in state court,
 
 see Rester v. McWane, Inc.,
 
 962 So.2d 183 (Ala.2007).