[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14283
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-03404-MSS-JSS

JOZETTE THOMAS,

Plaintiff-Appellant,

versus

SEMINOLE ELECTRIC COOPERATIVE INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 17, 2019)

Before WILSON, FAY and HULL, Circuit Judges.

PER CURIAM:

Jozette Thomas appeals the district court's order granting summary judgment in favor of Seminole Electric Cooperative Inc. ("Seminole") on her sex and age discrimination claims and hostile work environment claims under state and federal law.  We affirm.

## I. BACKGROUND

In 2016, Thomas filed the present suit against Seminole, asserting that Seminole had discharged her from employment because of her sex and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1); and the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a) ("FCRA"). She also alleged that she was subjected to a hostile work environment in violation of Title VII, the ADEA, and the FCRA.[1]

In 1997, Seminole hired Thomas to work as a programmer.  In 1999, she became a Systems Programmer for Seminole and was later promoted to "Systems Programmer 2" and "Senior Systems Programmer" positions.  Most of her job responsibilities involved working on the company's mainframe computer system; she was the primary support for programs known as SAS, JAMS scheduler, and Windows updates; and she also was the desktop support person and a backup

---

[1] Thomas also included a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1), but the district court deemed it abandoned.  Thomas does not challenge that ruling on appeal, thus abandoning the issue.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

2

support person for a website called SharePoint.  Julian Leon served as Thomas's direct supervisor until his retirement in July 2011.  Rick Miller was then promoted to Manager of Technical Support and became Thomas's immediate supervisor.

In 2012, Seminole began to transition from the mainframe computer system to a server-based one.  Prior to the transition from the mainframe system to the server-based system, Thomas had no experience with the server-based system.  She knew that to be qualified to do tasks on the server-based system, one had to be educated and trained.  According to Thomas, shortly after Miller became her supervisor, he told her that he dreaded "teaching somebody like [her], her [age], with no experience in the servers."  Because she was concerned that she might be laid off when the mainframe was decommissioned, she started looking for other jobs while she was trying to get trained on the server-based system.  She was not aware of anyone else at Seminole whose work was mainframe-based as well that would also need to acquire new skills.

Thomas requested to attend a class on servers around 2012, which was approved.  Additionally, she took another Microsoft-based class at Miller's request, attended a three-day online training course on Microsoft, took another online training course, and did training on her own time.  During the transition period, she also was assigned to assist and shadow two co-workers in order to learn aspects of their jobs.

In March 2014, Seminole completely shut down and decommissioned the mainframe. Thomas's 2014 annual review stated that she had spent "a lot of time this year trying to figure out the Microsoft System Center Service Desk Change Control software. She took a class but did not retain/learn enough to install the software." Following this review, Thomas was placed on a Performance Improvement Task Plan, which assigned her specific responsibilities and outlined specific expectations aimed at having her become more proficient in the PC and server-based environment.

In March 2016, Miller gave Thomas a Performance Improvement Plan ("PIP"). Miller explained that if Thomas did not improve her performance, she could be terminated. At that point, Thomas's duties were with the print servers and the SharePoint site. The company had reassigned responsibility for the JAMS scheduler to a younger, male co-worker. As part of the PIP, Seminole assigned Thomas to update and re-configure its printers to a new server. The project was to be completed by April 4, 2016. In May 2016, Thomas had not successfully completed the project; she was terminated that month. William Barfield, a male younger than 40 whose education and experience were in server-based computer systems, was hired to replace Thomas.

During Thomas's employment, Seminole maintained a comprehensive policy prohibiting all forms of unlawful harassment. According to Thomas's

testimony, she felt concerned that she would be fired because of Seminole's discriminatory culture.  At times, Miller suggested that she use her female body parts to get things done and would comment about needing to go to the restroom to take care of himself.  He also commented about her age, saying things like "[y]ou're old enough to remember that" in reference to an old movie or television show.  On other occasions, Miller would direct sexually-laced comments towards Thomas.  Steve Saunders, the Director of Information Technology and Miller's supervisor, also made an inappropriate comment about choosing his seat at a baseball game based on the best view of women in the stadium.  Thomas reported an offensive joke with foul language and questionable humor, made by Miller, to Saunders.  Thomas testified that while the inappropriate language from Miller stopped immediately following her conversation with Saunders, the inappropriate comments resumed sometime later.  Additionally, she reported Miller's use of profanity and foul language to Leon while he was still the supervisor and Miller was her co-worker.  Aside from these initial reports, Thomas testified that she did not report Miller's conduct because she was afraid of jeopardizing her job.

Following discovery, Seminole moved for summary judgment; the district court granted its motion.  The district court explained that Thomas could not rely on her years of tenure with Seminole because she admitted that her qualifications for the job changed drastically after the mainframe-based computer system was

5

decommissioned two years prior to her discharge. It also explained that Leon's testimony could not show that she was qualified for the job because he was not responsible for evaluating her performance during the relevant time period. The district court concluded that all persons who were employed during the relevant time period and were responsible for Thomas's job functions testified that she was unable to perform the basic functions of the job, as further reflected by her performance appraisals and her PIP progress report. The court also noted that Thomas had conceded that she was not qualified by contending that Seminole had failed to provide her with the training opportunities she needed to become proficient at her job. On this basis, the district court concluded that Thomas had not established a prima facie case under the *McDonnell Douglas*[2] framework.

Assuming that Thomas did make out a prima facie case, the district court further concluded that Seminole had offered a legitimate, non-discriminatory reason for firing her—she was unable to meet Seminole's performance expectations despite its efforts to provide her with the skills she needed. The court explained that Seminole had bolstered its reason for termination with evidence that it had tried to help her transition to the server environment; while she had improved initially under the first Performance Improvement Task Plan, she ultimately was unable to sustain her progress, and the company fired her after

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

giving her a final opportunity to improve under the 2016 PIP. As to her contention that Seminole's reason for her discharge was a pretext for discrimination, the court reasoned that her two proffered comparators had dissimilar job duties to Thomas, both came from server-based computer backgrounds, and neither was required to learn how to operate in an entirely new computing environment. Thus, the court concluded that she had failed to show pretext for discrimination.

As to her harassment claims, the district court noted that Thomas "cite[d] fewer than ten specific instances of conduct over a nearly five-year period." It explained that Miller's comments did not rise to the level of severity required to sustain a hostile work environment claim, because she had only identified a few specific remarks that Miller had made, accompanied by allegations of general use of profanity and discriminatory language.

On appeal, Thomas argues that the district court erred in finding that she had not established a prima facie case of discrimination because she did not show that she was qualified for the position, and that Seminole's reason for terminating her—that her performance was inadequate—was not pretextual. She also argues that the district court erred in rejecting her hostile work environment claim on the ground that her supervisor's harassment of her was not sufficiently severe or pervasive to constitute actionable harassment.

## II. DISCUSSION

7

We review a grant of summary judgment de novo. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* All justifiable inferences will be drawn in favor of the non-moving party, but inferences based on speculation are not reasonable. *Id.* at 1301. We will not make credibility determinations or weigh evidence at the summary judgment stage. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).

## A. Discriminatory Discharge Claims

Title VII makes it unlawful for an employer to refuse to hire "or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of" her sex. 42 U.S.C. § 2000e-2(a)(1). An employee can prove intentional discrimination using direct, circumstantial, or statistical evidence. *Alvarez v. Royal Atl. Developers*, 610 F.3d 1253, 1264 (11th Cir. 2010). When the plaintiff relies on circumstantial evidence for a Title VII claim, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Alvarez*, 610 F.3d at 1264.

The ADEA prohibits employers from firing employees who are 40 years or older based on their age. 29 U.S.C. § 623(a)(1); *Liebman v. Metro. Life Ins. Co.*,

808 F.3d 1294, 1298 (11th Cir. 2015).  The *McDonnell Douglas* framework applies to ADEA claims based on circumstantial evidence.  *Liebman*, 808 F.3d at 1298.

Additionally, the FCRA makes it unlawful for employers to discriminate on the basis of sex or age.  *See* Fla. Stat. §§ 760.01(b), 760.10.  Claims under the FCRA are analyzed under the same framework as claims brought under Title VII or the ADEA.  *See*, *e.g.*, *Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) (noting that Florida courts apply Title VII caselaw when interpreting the FCRA); *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014) (noting, in relevant part, that age-related discrimination actions under the FCRA are analyzed under the same frameworks as the ADEA).

Under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination by satisfying the elements of a prima facie case of discrimination.  *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  To establish a prima facie case, the plaintiff may show, among other things, that she was qualified for the position.  *Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1293 (11th Cir. 1989).  In *Stanfield*, we held that the jury could infer from the fact that the plaintiff was employed by the defendant company for more than 16 years and had no complaints in her personnel file that she was qualified for the job.  *Id.* at 1294.  In *Ferguson*, we held that the plaintiff,

9

who was hired as a medical records technician and later applied for a librarian position with the same employer, was not qualified for the librarian position because she did not possess the requisite educational qualifications. *Ferguson v. Veterans Admin.*, 723 F.2d 871, 872-73 (11th Cir. 1984).

Here, Thomas testified that her education and experience were becoming obsolete, implying that she did not possess the requisite educational qualifications, much like the plaintiff in *Ferguson*. *See Ferguson*, 723 F.2d at 872-73. And, unlike the plaintiff in *Stanfield*, Thomas's job responsibilities significantly changed in the years preceding her termination. *See Stanfield*, 867 F.2d at 1294. Accordingly, Thomas failed to establish a prima facie case of discrimination because she did not show that she was qualified for her position.[3] *See Brooks*, 446 F.3d at 1162; *Stanfield*, 867 F.2d at 1293.

However, even if we assume that Thomas had established a prima facie case of discrimination, we would still conclude that Seminole was entitled to summary judgment. If a plaintiff establishes a prima facie case of discrimination, and the employer proffers a legitimate, non-discriminatory reason for its action, the burden shifts back to the plaintiff to show that the employer's reason was really a pretext for unlawful discrimination. *Brooks*, 446 F.3d at 1162. To be pretextual, the

---

[3] The parties do not dispute that Thomas is a member of a protected class, was subject to an adverse employment action, and was replaced by a younger individual.

plaintiff must show that the proffered reason was false and that the real reason was discriminatory. *Id.* at 1163. The plaintiff may accomplish this by producing "sufficient evidence to allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Id.* So long as the reason is one that would motivate a reasonable employer, the plaintiff may not show pretext by simply questioning the wisdom of that reason. *Id.*

We are only concerned with whether an employment decision was motivated by unlawful discriminatory animus; we do not consider whether that decision was prudent or fair. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). We must, considering all of the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered non-discriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered "legitimate reasons were not what actually motivated its conduct." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quoting *Cooper–Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

Thomas has failed to show that Seminole's legitimate, non-discriminatory reason for terminating her—inadequate skills and performance—was pretextual. Thomas did not rebut evidence that her performance was deficient and did not show either that her male co-workers were similarly situated or treated more favorably. *See Brooks*, 446 F.3d at 1163; *Silvera*, 244 F.3d at 1258. Additionally,

11

to the extent that she challenges the fairness of Seminole's determination of her performance, we do not consider that question. *See Chapman*, 229 F.3d at 1030. The district court did not err in granting summary judgment to Seminole on Thomas's sex and age discriminatory discharge claims.

## B. Hostile Work Environment Claims

Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). To prove a prima facie case for hostile work environment, the plaintiff may establish that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis exits for holding the employer liable. *Id.*

The "severe or pervasive" requirement "contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In evaluating the objective severity of the harassment, we consider, *inter alia*: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a

12

mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Id.*  Isolated incidents that are not extremely serious are not sufficiently severe or pervasive.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998).  Conduct must be extreme to amount to a change in the terms and conditions of employment.  *Id.*, 118 S. Ct. at 2283.  Moreover, we have opined that cursing in the workplace may fall "under the rubric of general vulgarity that Title VII does not regulate."  *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 n.4 (11th Cir. 2010).

Here, Thomas failed to show that her supervisor's inappropriate conduct was severe or pervasive.  Thomas did not allege that the supervisor's conduct was physically threatening or interfered with her job, and the conduct was more akin to isolated offensive utterances than severe or pervasive harassment.  *See Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283; *Miller*, 277 F.3d at 1276.  Moreover, Title VII does not regulate general profanity, such as cursing in the workplace.  *See Reeves*, 594 F.3d at 810 n.4.  Accordingly, the district court did not err in granting summary judgment as to Thomas's hostile work environment claim.[4]

**AFFIRMED.**

---

[4] While we have not decided whether hostile work environment claims are cognizable under the ADEA, we need not do so here.  Assuming *arguendo* that such claims are cognizable, Thomas's claim fails as a matter of law.